## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-----------------------------------------------------------------

| | |
|---|---|
| **RICHARD SCHIRILLO, AUGUSTO CORREIA:** | **Civil Action No.** |
| **And RANDOLPH BOND** : | **303cv674 (WWE)** |
| : | |
| **v.** : | |
| : | |
| **TOWN OF STRATFORD and in their** : | |
| **Individual capacities EILEEN MURPHY,** : | |
| **MICHAEL FEENEY, DORINDA BORER,** : | |
| **MARK BARNHART, JACK OBERNESSER,** : | |
| **MICHAEL SINGH, and SANDRA ZALIK** : | **September 30, 2004** |

-----------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

### I.    PRELIMINARY STATEMENT

The plaintiffs are former employees of the defendant Town of Stratford who retired.  Plaintiffs Schirillo, Correia and Bond worked at the Stratford Water Pollution Control facility and were members of the public works local bargaining unit.  Plaintiff Brenton was a member of the supervisors' union.    At all relevant times, Defendant Eileen Murphy was employed by the Town of Stratford in the position of Insurance Coordinator.  Defendants Michael Feeney and Mark Barnhart are former Town Managers of the Town of Stratford.  Defendant Jack Obernesser is the former Director of Human Resources and Dorinda Borer is the current Director of Human Resources.

Under a provision in the collective bargaining agreements between the Town and the Public Works Union and between the Town and the Supervisors Union, members of those bargaining units had the right to the same hypertension or heart disease benefits

under the same terms and conditions as provided to municipal fire and police personnel under Connecticut General Statutes Section 7-433c [Public Act 71-524]. The bargaining agreements contain grievance and arbitration procedures typical of those found in many labor contracts. The Public Works Agreement requires a matter to be submitted to the grievance procedure "within 15 days of its most recent occurrence", and the Supervisors Agreement requires that grievances be filed "within 15 days of the date on which the grievance or dispute arose." Disputes regarding entitlement to heart and hypertension benefits under the respective collective bargaining agreements are, of course, subject to the mandatory grievance and arbitration procedures.

While still employed by the Town, each of the plaintiffs requested contractual heart and hypertension benefits, and their requests were denied. The specific reasons for the Town's denials were listed. Thereafter, Bond and Correia filed grievances over the denials by the Town of their requests for contractual heart and hypertension benefits, which the Town claimed were untimely. Both grievances proceeded to arbitration on the issue of their substantive arbitrability before an arbitration panel of the Connecticut State Board of Mediation and Arbitration. The arbitrators held that the grievances were untimely and not arbitrable.

Plaintiffs Schirillo and Brenton did not file grievances over the Town's denials of their requests for heart and hypertension benefits under the respective collective bargaining agreements. Schirillo retired more than three months after the Town refused to pay him contractual heart and hypertension benefits, and Brenton retired approximately one and one-half years after his request for contractual heart and hypertension benefits was denied.

The plaintiffs also pursued claims under the Workers' Compensation Act and under Connecticut General Statutes § 7-433c for heart and hypertension benefits before the Connecticut Workers' Compensation Commission. The Town asserted that the Workers' Compensation Commission did not have subject matter jurisdiction over the claims for heart and hypertension benefits under Section 7-433c because the plaintiffs were not members of its police or fire department, and the Commission agreed that it did not have jurisdiction over such claims.

In their first amended complaint, the plaintiffs assert claims under 42 U.S.C. §1983 based on alleged violations of their Fourteenth Amendment right to due process. The plaintiffs also allege due process claims under the Connecticut Constitution, and state common law claims for breach of contract and breach of the implied covenants of good faith and fair dealing. Defendants Murphy, Feeney, Barnhart, Borer and Obernesser move for summary judgment on all claims.

## II.    SUMMARY JUDGMENT STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc.56(c); Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 250, 106 S.Ct. 2505 91, Ld2 202, (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party, "and facts are material to the outcome if application of the relevant substantive law requires their determination." Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248. The moving party bears the burden of proof to establish that no

genuine issue exists as to any material fact. <u>Celotix Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548 91, L.Ed.2d 265 (1986). If the moving party meets its burden, the burden then shifts to the party opposing summary judgment who "may not rest upon mere allegations or denials" but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.56(e).

  To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly prohibitive, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50. Summary judgment is proper only when no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight." <u>Gallo v. Prudential Residential Servs. Ltd. Partnership</u>, 22 F.3d 1219, 1223 (2d Cir.1994). The Court must view all inferences and ambiguities in favor of the party opposing the summary judgment motion. See <u>Matsushita Elec. Indus. Co.</u>, <u>supra</u>, 477 U.S. 574-587-88; <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000).

## III.  <u>ARGUMENT</u>

### A.  <u>The Section 1983 Claims</u>

  In a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendants, while acting under color of state law, deprived him of a right secured by the federal constitution or federal law. In the instant action, the plaintiffs claim that the Town and the individual defendants, acting under color of law, deprived them of their Fourteenth Amendment right to procedural due process.

**1.  There is No Evidence of Personal Participation in the Alleged Deprivation by Defendant Feeney, Barnhart, Borer or Obernesser.**

Defendants Michael Feeney, Dorinda Borer, Mark Barnhart and Jack Obernesser are entitled to summary judgment because there is no evidence that any of them personally participated in the decision to deny any of the requests made by any of the plaintiffs for contractual heart or hypertension benefits under the provisions of the applicable collective bargaining agreements.   There is also no evidence that any of them had knowledge of any facts that might have indicated or even suggested that the denials of such contractual benefits possibly might have violated the Due Process Clause.  It is well settled in this circuit that personal involvement of defendants in the alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983. Provost v. City of Newburgh, 262 F.3d 146, citing Wright v. Smith, 21 F.3d 496, 501, (2d Cir. 1994) quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991). "What we have meant by using phrases such as direct participation as a basis of liability is personal participation by one who has knowledge of the facts that render the conduct illegal."  Provost v. City of Newburgh, supra, at 155.

**2.      There Was No Constitutionally Protected Property Right**

There is no dispute that at all times defendant Eileen Murphy was acting in her capacity as an employee of the defendant Town and thus was acting under color of state law; however, there is no triable issue of material fact as to whether any of the plaintiffs were deprived of their constitutional right to due process.

A procedural due process claim under Section 1983 requires the plaintiff to show that he possessed a property interest protected by the due process clause of the Fourteenth Amendment and that he was deprived of that interest by the defendant without being

afforded sufficient process.  <u>Annis v. County of Westchester</u>, 136 F.3d 239, 245 (2d Cir. 1998); see also <u>Giordano v. City of New York</u>, 274 F.3d 740, 750 (2d Cir. 2001).

Property interests protected by the due process clause arise from independent sources, such as a contract or state law.  <u>Board of Regents v. Roth</u>, 208 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  While state law determines whether an individual has a property interest, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2002), quoting <u>Ezekwo v. NYC Health & Hospitals Corp.</u>, 940 F.2d 775, 782 (2d Cir. 1991).  In order to have a constitutionally protected property interest, the property interest must be substantial and the plaintiffs must have had "a legitimate claim of entitlement to it."  <u>Board of Regents v. Roth</u>, <u>supra</u>, 408 U.S. at 577.

All of the plaintiffs, except, Mr. Brenton, were members of a collective bargaining unit represented by the Stratford Public Works Employees Association Local No. 134, Affiliate of the International Federation of Professional and Technical Engineers, AFL-CIO-CLC. (hereinafter "Association").  Plaintiff Brenton was a member of Supervisors Union Local 3804, Council 4, AFSCME, AFL-CIO (hereinafter "Supervisors' Union")

By Connecticut statute, members of paid municipal fire departments and regular members of police departments who, on or off duty, suffer any heart or hypertension impairment that results in a temporary or permanent partial or total disability, provided they meet certain statutory prerequisites, are entitled to the same benefits they would receive under the Workers' Compensation Act if the disability had been caused by a

personal injury that arose in the course and scope of their employment.  Conn. Gen. Stats.

§ 7-433c.  In addition, the statute provides that eligible municipal fire and police who are

disabled from performing their jobs are entitled to a job-related (in the line of duty)

disability pension.  Id.

 The Town and the Association were parties to a collective bargaining agreement

that was in effect from July 1, 1997 through June 30, 2000 (hereinafter "the Public Works

Agreement"), as well as successor agreements.  Similarly, the Town and the Supervisors'

Union were parties to a collective bargaining agreement that was in effect during the

same three-year period.  Section 13.3 of the Public Works Agreement provided:

"Effective April 1, 1974, the Municipality shall provide all members of the bargaining

unit with the hypertension or heart disease benefits mandated for municipal fire and

police personnel under P.A. [71-] 524 under the same terms and conditions as set forth in

said Public Act provided; however, that any new employee hired on or after November 1,

1978 shall not be eligible for hypertension or heart disease benefits; provided, however,

there shall be a rebuttable presumption as to whether any such health condition or

impairment arose out of or in the course of employment."  Similarly, Article 10, §2 of the

Supervisors' Agreement provides in pertinent part that members of the supervisors'

bargaining unit hired on or before August 17, 1979  "shall be subject to all of the

provisions of 1971 P.A. 524 under the same terms and conditions set forth in said public

act for municipal and fire personnel."

 In the instant case, the plaintiffs claim that they had a constitutionally protected

property interest in the heart or hypertension employee benefits under their respective

collective bargaining agreements.  These benefits, if the plaintiffs were eligible, would

consist principally of temporary or permanent partial total disability indemnity benefits equal to those provided for in Conn. Gen. Stats. §§ 31-307 and 31-308, payments for medical care and prescription drugs without having to use group medical insurance with co-pays and deductibles, reimbursement of lost wages without having to use paid sick time, and continuation of group medical benefits under Section 31-284b for the period they were collecting indemnity disability benefits.  All of the plaintiffs were entitled to up to one year of paid sick leave and did not lose any wages as a result of their alleged heart or hypertension conditions.

A public employee's right to continued employment is substantial enough to warrant constitutional protection. Board of Regents v. Roth, supra, 408 U.S. at 577; Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).  In Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 782 (2d Cir. 1991), the Second Circuit held that a resident medical doctor's right to appointment to the position of Chief Resident rose to the level of a property interest entitled to due process protection because the plaintiff's interest in that position was more than merely financial in that it was a once in a career opportunity and was of "significant professional value." Id. at 783.  However, employment decisions ordinarily should not be considered property interests protected by the Due Process Clause.  Otherwise, a vast array of personnel and employment decisions by state and local governments would give rise to federal damage suits under 42 U.S.C. § 1983 and the Due Process clause would be trivialized.  As the court stated in Parrett v. City of Connersville, 737 F.2d 690, 693 (7th Cir.1984) in holding that a lateral transfer was not a constitutionally protected property right, subjecting virtually all public

personnel actions to potential Section 1983 lawsuits would be "a breathtaking expansion in the scope of that already far-reaching statute and one remote from the contemplation of the framers." Under collective bargaining agreements, public sector union employees are provided with many different kinds of employment benefits. Short of termination or suspensions without pay which involve the employment itself, an employee's entitlement to a benefit under a collective bargaining agreement should not be considered of sufficient magnitude to implicate the Due Process Clause.

In the instant case, the plaintiffs' right to special heart or hypertension benefits under the collective bargaining agreements is solely financial and does not involve their right to continued employment or to their continued receipt of wages. The plaintiffs' right to contractual heart and hypertension benefits does not rise to the level of a property interest entitled to the protections of the Due Process Clause.

**3.      There Was No Deprivation of Due Process.**

Even assuming *arguendo* that the right to contractual heart or hypertension benefits were constitutionally protected, the plaintiffs were not denied those benefits without due process.

The Public Works Agreement between the Town and the Association and the Supervisors' Agreement between the Town and the Supervisors' Union contained typical labor dispute resolution procedures. Article 17 of the Public Works Agreement sets forth the grievance and arbitration procedure. Under Section 17.1, a "grievance" is defined as "any dispute between the Municipality and the Association or between the Municipality and any employee or group of employees concerning the interpretation, application or violation of the provisions of this Agreement." Section 17.1 further provides that "[n]o

18000\272\mol revised

matter shall be subject to grievance unless taken up within fifteen (15) working days of its most recent occurrence." The contractual grievance procedure involves successive appeals to higher levels of management, and if a contractual dispute is not resolved under the preliminary grievance steps, the Association may proceed to arbitration. Article 15 of the Supervisors Agreement contained a grievance and arbitration procedure similar to the one in the Public Works Agreement.

The property interest of the plaintiffs is their right, if they qualify, to heart or hypertension benefits. Since the plaintiffs were not members of the Town fire or police departments, their property interest is not created by statute. Rather, their property interest in heart or hypertension benefits arises under the provisions of the applicable collective bargaining agreement, and thus is a contractual right. As such, any "dispute" between a plaintiff or his union and the Town concerning whether the Town's denials of the plaintiffs' respective requests for heart or hypertension benefits violated Section 13.3 of the Public Works Agreement, or in the case of Brenton, Article 10, §2 of the Supervisors Agreement, was subject to redress under the mandatory grievance and arbitration provisions of the respective collective bargaining agreement. If the plaintiffs' right to contractual heart or hypertension benefits is found to be a constitutionally protected property right, the pivotal issue in deciding this motion for summary judgment is whether the post-deprivation process provided by the grievance and arbitration procedure in the collective bargaining agreements satisfies constitutional due process. The position of the defendants is that as a matter of law it does.

Federal constitutional law determines what process the plaintiffs are due. See Ciambriello v. City of Nassau, 292 F.3d 307, 319 (2d.Cir.2002); Dwyer, 777 F.2d at 830,

quoting <u>Vitek v. Jones</u>, 445 U.S. 480, 491, 100 S.Ct. 1254, 63 L.2d 552 (1980).  "Due process is flexible and calls for such procedural protections as the particular situation demands."  <u>Mathews</u>, 424 U.S. at 334.

To determine whether the grievance procedures in a collective bargaining agreement comply with due process requirements, courts apply the three-part balancing test announced by the Supreme Court in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976). The first factor to be considered is the private interest that will be affected by the official action.  Here, the interest of the plaintiffs in obtaining heart or hypertension benefits under the collective bargaining agreement is not nearly as important or drastic as termination or suspension without pay.  The plaintiffs' livelihoods were not imperiled by the Town's denial of such benefits.

The second factor is the risk of erroneous deprivation through the process available and the probable value of additional safeguards.  It is undisputed that the Town provided each of the plaintiffs with the reasons for its denial of their respective requests for contractual heart and hypertension benefits. The grievance procedure allows for arbitration if the plaintiffs dispute the denial of benefits.  The risk of an erroneous determination in grievance and arbitration proceedings mandated by a collective bargaining agreement is minimal. <u>Costello v. Town of Fairfield</u>, 811 F.2d 782, 784 (2d Cir.1987)(even if increased pension benefits were considered to be a constitutionally protected property interest, there was no denial of due process because adequate post-deprivation remedies were available through the collective bargaining agreement grievance procedure)  <u>Dykes v. Southeastern Pa. Transp. Auth.</u>, 68 F.3d 1564, 1572 (3d Cir.1995); <u>Armstrong v. Meyers,</u> 964 F.3d 948, 951 (9th Cir.1995)(risk of erroneous

determination in arbitration is not large and the value of additional procedures is not great); Buttitta v. City of Chicago, 9 F.3d 1198, 1206 (7th Cir.1993)("As in Mathews, the question here is whether the plaintiff was disabled, the answer depends on medical reports, and the risk of erroneous deprivation [under the post-deprivation grievance procedure in the collective bargaining agreement] is too slight to require a pre-deprivation hearing.").  Indeed, plaintiff Bond apparently believed that even the post-denial preliminary steps of the grievance process would not have been of any value in this instance because he requested, through his attorney, that they be waived. If the plaintiffs can prove to the arbitrator(s) that they meet the criteria to be awarded contractual heart and hypertension benefits pursuant to Section 13.3 of the Public Works Agreement or Article 10, §2 of the Supervisors Agreement, as the case may be, then the arbitrator(s) are empowered to award them a remedy of full heart or hypertension benefits equivalent to those provided to fire and police under General Statutes §7-433c.  The second Mathews factor weighs heavily in favor of concluding that the grievance and arbitration procedures here at issue satisfy due process.

The third Mathews factor is the government's interest including the function involved and the fiscal and the administrative burdens that the additional or substitute procedural requirements would entail.  There is a significant governmental interest and a strong state and federal public policy favoring the resolution of employment disputes through grievance and arbitration procedures without having to resort to litigation.  See Bridgeport v. Bridgeport Police Local 1159, 183 Conn. 102, 107, 438 A.2d 1171 (1981)("public policy favoring arbitration which is intended to avoid formalities, delay, expense and vexation of ordinary litigation."); Federal Arbitration Act, 9 U.S.C. § 1 et

seq.  As stated in St. Germain v. Pa. Liquor Control Board, 2000 WL 39065

(E.D.Pa.2000), "[p]ublic employers utilize [collective bargaining agreement grievance

and arbitration] procedures precisely because they have been deemed the most efficient

way of handling countless disputes" which arise between the employer and employees.

Thus, the third factor also weighs heavily in favor of finding that the grievance

procedures comport with due process.

The grievance and arbitration procedures in the Public Works and Supervisors'

Agreements are typical of labor dispute grievance and arbitration procedures in collective

bargaining agreements in the private and public sectors.  Numerous courts, including

those in this circuit, have held that such post-deprivation procedures, providing for a

hearing to contest and challenge an employment decision, are sufficient to satisfy due

process. See Harhay v. Town of Ellington Board of Education, 323 F.3d 206, 213 (2d

Cir. 2003); Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir.

1998); Wojcik v. Mass. State Lottery Comm', 300 F.3d 92, 102 (1st Cir. 2002) (pre-

deprivation notice and "the full arbitration afforded by the collective bargaining

agreement were more than sufficient to satisfy" due process requirements); Dykes v.

SEPTA, 68 F.3d 1564, 1571 (3d Cir.1995); Buttitta v. City of Chicago, supra; Armstrong

v. Myers, supra; Solomin v. Philadelpha Housing Authority, 2004 WL 1427140 (E.D.Pa.

2004)(grievance and arbitration procedures in the collective bargaining agreement

provided satisfactory due process protections to former housing authority employee who

was placed on an unpaid leave of absence pending an investigation into alleged

wrongdoing); Jackson v. Temple Univ., 721 F.3d 931, 933 (3rd Cir. 1983)(the right to

proceed to arbitration satisfied due process even if earlier grievance hearings were

inherently biased).

The grievance and arbitration process available under the collective bargaining agreements here at issue provides due process and no additional process is due.

### 4.  The Defendants Are Entitled To Qualified Immunity

Qualified immunity shields a government official performing discretionary functions from suit for damages under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102  S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see also Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 358 (2d Cir.2004).  The breadth of the qualified immunity defense reflects the Supreme Court's concern not only with the cost of exposing government officials to civil liability but also with "the general costs of subjecting officials to the risks of trial – a distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.  Harlow, 457 U.S. at 816, 102 S.Ct. at 2737.  Those concerns underscore the importance of resolving issues of qualified immunity on summary judgment wherever possible.

The three-step sequential inquiry in determining whether qualified immunity applies is as follows:  First, whether the defendant violated a federal or constitutional right; if so, whether the right allegedly violated was clearly established; and if so, whether the defendant's actions were objectively reasonable.  Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211-12 (2d Cir.2003).  For the reasons stated above, the plaintiffs do not have a significant enough property interest in contractual heart or hypertension benefits to implicate the Due Process Clause, and even if that right

was constitutionally protected, the grievance and arbitration procedure affords the plaintiffs due process and they are not entitled to additional process.  Assuming for the sake of argument that the first step of the qualified immunity test is satisfied, then since due process is a clearly established right, the issue is whether the defendants' actions were objectively reasonable.

The question of whether a right was "clearly established" requires a "more particularized" focus. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  That is not to say that an official is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.  Id. at 640, 107 S.Ct. at 3039; see also LaBounty v. Coughlin, 137 F3d 68, 73 (2d Cir.1998).  It was not clearly established in this Circuit in 1998 when the decisions here were made (nor today) that a public employee's right to a contractual benefit similar to heart or hypertension benefits is a constitutionally protected property interest or that post deprivation grievance and arbitration procedures would not be adequate to meet due process.  Ezekwo (once in a career opportunity to serve as Chief Resident in a teaching hospital) and Narumanchi (suspension without pay) stand for the general proposition that employment actions short of termination can amount to a deprivation of a constitutionally protected property interest but are factually distinguishable from the instant case.  There is a paucity of decisions involving employment benefits unrelated to contractual or statutory rights to continued employment, to a particular rank or job position, or to a promotional opportunity.  Costello v. Town of Fairfield, 811 F.2d 782, 784 (2d Cir.1987) indicates that in the

employment context grievance procedures in a collective bargaining agreement satisfy due process for denials of increases or expansions to existing benefits.  Harhay, though decided last year, serves to illustrate the considerable lack of clarity with regard to other types of employment benefits.  There is no bright line test to determine what employment benefits in the public sector are property rights protected by the Due Process Clause. Certainly, many are not, but where the line is drawn requires a fact specific inquiry of the particular right in question and the inherent tension between the Mathews factors adds to the confusion. The plaintiffs neither had a clearly established property interest in heart or hypertension benefits nor a clearly established right to process in addition to that provided under the grievance and arbitration procedures.

The test of "objective reasonableness" is satisfied if officials of reasonable competence could disagree on the legality of the defendant's actions. Tenenbaum v. Williams, 193 F.3d 581, 596-97 (2d Cir.1999). Certainly, competent insurance coordinators could disagree as to whether contractual heart or hypertension benefits are constitutionally protected and if so, whether the process of filing a grievance over the under the collective bargaining agreements and proceeding through the preliminary steps of the grievance procedure to arbitration satisfies due process.

For all of the above reasons, the individual defendants are entitled to qualified immunity as a matter of law.

### 5.    Plaintiff Randolph Bond Did Not Suffer Any "Deprivation" Because He Received All of the Heart or Hypertension Benefits He Could Have Been Entitled To Under Section 13.3 of the Public Works Agreement.

Plaintiff Bond did not suffer any "deprivation" of his constitutionally protected property right to contractual heart and hypertension benefits because he has received all

of the benefits he would have been entitled to under Section 13.3 of the Public Works Agreement.

In addition to filing a grievance, Bond pursued a claim for Chapter 568 benefits and for §7-433c heart and hypertension benefits before the Connecticut Workers' Compensation Commission. Bond's claim for heart and hypertension benefits under the Workers Compensation Act proceeded to a formal hearing. Pursuant to the finding and award of Commissioner Wilson issued on December 13, 1999, Bond's heart and hypertension condition was found to be a compensable injury under the Connecticut Workers' Compensation Act, and Bond was awarded compensation and medical care benefits provided under Chapter 568 of the Connecticut General Statutes. On appeal to the Workers' Compensation Board, the finding and award of Commissioner Wilson was affirmed. Pursuant to the Workers Compensation Commissioner's finding and award, Bond received all benefits he was entitled to under the provisions of Chapter 568 of the Connecticut General Statutes.

Effective April 3, 1998, Bond retired from his employment with the Town. In August 1998, Bond's superannuation retirement was converted to a disability retirement. The disability pension Bond was granted is the same disability pension granted to an employee whose disability was caused by a personal injury which arose out of and in the course of employment and was suffered within the scope of his or her employment.

Thus, notwithstanding the arbitration award finding that Bond's grievance seeking heart and hypertension benefits pursuant to Section 13.3 of the Public Works Agreement was not arbitrable, he has been awarded heart and hypertension benefits under the Workers' Compensation Act and was granted a disability pension by the Town Pension

Board.  Therefore, plaintiff Bond has received all of the benefits, namely Chapter 568

benefits and a disability pension, he would be entitled to under Section 13.3 of the

collective bargaining agreement.  Accordingly, Bond did not suffer a deprivation and thus

has no Section1983 claim.

### 6.    Schirillo and Brenton Failed to Exhaust Administrative Remedies

The Town never provided Schirillo or Brenton with any contractual medical or

indemnity heart or hypertension benefits. Schirillo's union advised him that he did not

have grounds to file a grievance for contractual benefits under §13.3 of the Public Works

Agreement, and Brenton was aware that his recourse was to file a grievance.  Neither

Schirillo nor his Union ever filed a grievance for the Town's failure to provide him with

benefits under §13.3 of the Agreement.

The post-deprivation grievance procedures set forth in the Public Works

Agreement are constitutionally adequate.  This Court lacks subject matter jurisdiction

over the Section 1983 due process claims of Schirillo and Brenton because they failed to

exhaust their administrative remedies available under the grievance and arbitration

provisions of the applicable collective bargaining agreements. Generally, a plaintiff in a

Section 1983 action is not required to exhaust his administrative remedies before bringing

suit.  Patsy v. Board of Regents of Florida, 457 U.S. 496, 515 (1982).  Accordingly, as a

general rule, a municipal employee is not required to pursue collectively-bargained-for

grievance and arbitration procedures before filing suit under Section 1983 to challenge

the constitutional sufficiency of those grievance procedures.  Goetz v. Windsor Cent.

Sch. Dist., 698 F.2d 606, 610 (2d Cir.1983); see, also, Costello, 811 F.2d at 785 (Van

Graafeiland, J., concurring).  However, the Patsy holding does not apply in a procedural

due process suit if the plaintiff failed to avail himself of his right to be heard through administrative remedies in the collective bargaining agreement, which is the very right being asserted.  New York State National Organization for Women v. Pataki, 261 F.3d 156, 169 (2d Cir. 2001) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000), cert. denied, 534 U.S. 1128, 122 S.Ct. 1066, 151 L.Ed.2d 969 (2002)( "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").  Thus, plaintiff Schirillo and Brenton failed to take advantage of the process that was available to them, they cannot maintain a Section 1983 claim based on denial of due process, and the Court lacks subject matter jurisdiction over such claims.  See Russo v. City of Hartford, 184 F.Supp.2d 169, 180 (D.Conn.2001)(police detective's section 1983 due process claim dismissed for lack of subject matter jurisdiction because he failed to avail himself of the grievance and arbitration procedure in the collective bargaining agreement), citing Narumanchi v. Bd. of Trustees of Connecticut State Univ., 850 F.2d 70, 72 (2d Cir.1998) (affirming that a dismissal of a tenured teacher's procedural due process claim because the teacher failed to submit to his union's grievance procedure under the collective bargaining agreement after he was suspended without pay); Aronson v. Hall, 707 F.2d 693, 694 (2d Cir.1983) (per curium) (affirming a district court's dismissal of a plaintiff's procedural due process claim because "[h]aving chosen not to pursue available administrative review, [plaintiff] is hardly in the position to claim that such review denied him due process.").

The fact that in two companion grievances, an arbitration panel of the SBMA found that the grievances were not timely filed under Section 17.1 of the Public Works

Agreement does not excuse plaintiff Schirillo's failure to file a grievance over the Town's denial of his request for contractual heart and hypertension benefits pursuant to Section 13.3.  Under Connecticut law, arbitrators do not have to give preclusive effect to prior arbitration awards and are free to disregard prior awards.  Town of Stratford v. International Association of Firefighters, 248 Conn. 108, 114 & 125 (1999)("Arbitrators are not bound to follow prior arbitration decisions, even in cases in which the grievances at issue involve the same parties and interpretation of the same contract provisions.")

The U.S. Supreme Court has recognized three situations in which a plaintiff may institute a lawsuit despite his failure to exhaust fully his contractual remedies.  Schum v. S. Buffalo Ry. Co., 496 F.2d 328, 330 (2d Cir. 1974) citing, Glover v. St. Louis San Fancisco Ry. Co., 393 U.S. 324, 329-31 (1969).  Those three situations which excuse an employee's failure to exhaust administrative remedies available under a collective bargaining agreement are (1) when the employer repudiates the grievance procedure; (2) if the union breaches its duty of fair representation; and (3) where pursuing the administrative remedies would be wholly futile.  Schum at 330.

In the instant case, the first situation did not occur because the Town never repudiated the grievance procedure available under the collective bargaining agreement, and the second situation has no bearing because this is not an action for breach of the union's duty of fair representation.  It is undisputed that plaintiffs Schirillo and Brenton received written notice from the Town specifying the Town's reasons for denying their respective claims for contractual heart and hypertension benefits pursuant to the collective bargaining agreement.  They therefore cannot argue that it would have been futile to invoke the grievance procedure because of time limits for filing a grievance

passed before they knew the reasons that their claims for contractual heart or hypertension benefits under the collective bargaining agreement had been denied by the Town. Ciambriello v. City of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

Nor can Schirillo and Brenton successfully claim that he could not file a grievance under the grievance procedure of the collective bargaining agreement because he is retired and not an active employee. In order to be entitled to heart or hypertension benefits under Conn. Gen. Stat. §7-433c, both the condition of hypertension or heart disease and the disability resulting from such a condition must be suffered while the individual was on or off duty as a regular member of a paid municipal police or fire department. Gorman v. Waterbury, 4 Conn.App. 226, 231-32 (1985). Thus, in order to be entitled to heart and hypertension benefits under Section 13.3 of the Public Works Agreement, both the heart or hypertension condition and the resulting disability must have occurred while the employee was actively employed.

It is well established that rights that accrue under a collective bargaining agreement are enforceable through the grievance process after the employee's employment ends. City of Hartford and Hartford Police Union, SBMA Case #2001-A-0003 (2001). (Retiree, through the Union, is entitled to file a grievance and have that grievance heard); San Francisco Community College District and San Francisco Community College Federation of Teachers, 92 LA (BNA) 108 (Wilcox 1998); Elkouri & Elkouri, How Arbitration Works pp. 731-732 (1985); O. Fairweather Practice & Procedure in Labor Arbitration, pp. 117-18 (1983). More importantly, at the time of the occurrence which would trigger a grievance, namely the Town's refusal to pay contractual heart or hypertension benefits to Schirillo, he was a full-time employee

subject to the grievance procedure in the Public Works Agreement.  It is undisputed that the Town denied the claims of Schirillo and Brenton for heart and hypertension benefits before they retired.  Plaintiff Schirillo and Brenton cannot fail to file a timely grievance within the 15-day period prescribed by their respective collective bargaining agreements, retire, and then file a lawsuit seeking contractual heart or hypertension benefits. To hold otherwise would give retirees greater rights than active employees.

The complaint alleges that defendant Eileen Murphy, the Town's insurance coordinator who also was the treasurer and a member of the executive board of the Supervisor's Union, made misrepresentations to Mr. Brenton which misled him into believing that his recourse was through the Workers' Compensation Commission and the Pension Board.  The Pension Board has the sole authority to award disability pensions. Therefore, insofar as a disability pension under Article 10, § 2 is concerned, any representation by Murphy that Brenton would have to make application to the Town Pension Board for such a disability pension would have been true and accurate.  In any event, it is undisputed that Ms. Murphy did not make any misrepresentation to Brenton with regard to his request for contractual heart and hypertension benefits because Mr. Brenton admitted at his deposition that he did not have any conversation with Murphy about his filing a claim for heart and hypertension benefits against the Town.

To the extent that Brenton may contend that Murphy in her capacity as a union officer may have had an obligation to advise Brenton to file a grievance, that contention would be relevant in an action against the Supervisors Union for breach of duty of fair representation but it is not germane in the instant Section 1983 action in which defendant Murphy was acting under color of law in her capacity as an employee of the Town.

Furthermore, plaintiff Brenton could not have been misled because by his own admission he was aware that was his avenue of recourse when the Town denied his request for contractual heart and hypertension benefits was to file a grievance pursuant to the grievance procedure set forth in the Supervisors Agreement.

**B.**     **Due Process Claim Under the Connecticut Constitution**

In their first amended complaint dated November 3, 2003, the plaintiffs allege that the defendants violated their rights to due process under Article First, Sections 1 and 10 of the Connecticut Constitution. Article First, Section 1 provides, "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." Article First, Section 1 of the Connecticut Constitution guarantees equal rights, not due process.

Article First, Section 10 of the Connecticut Constitution provides, "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Although the Connecticut Supreme Court has held that the "[t]he due process clause of the Connecticut Constitution shares but is not limited by the content of its federal counterpart", State v. Morales, 232 Conn. 707, 717-18 (1995), Connecticut courts apply the Mathews balancing test and look to federal precedent for guidance in deciding how much process is due under the State Constitutional Due Process clause. The defendants have not found any Connecticut state court decision at any level that is on point. However, with respect to employee benefits, there is no apparent difference in terms of the interests or history of the State of Connecticut that would indicate that the requirements of due process under the State Constitution would

be any greater than the due process requirements of the Fourteenth Amendment.

Based on application of the Mathews three-factor balancing test and of federal precedent

as guidance, as a matter of law, the grievance and arbitration procedures in the collective

bargaining agreements provided the plaintiffs with all of the process they were due, not

only under the Federal Constitution, but also under the Connecticut Constitution.

**C.    The State Law Claim for Breach of Contract**

Plaintiffs Bond and Correia are foreclosed from bringing beach of contract claims

based on allegations that the defendants breached Section 13.3 of the Public Works

Agreement by failing to provide them with heart and hypertension benefits because the

prior arbitration awards finding that their grievances were untimely and not arbitrable are

"final and binding." (Public Works Agreement, subsection C of Section 17.3)  Under

Connecticut law, "whether a particular dispute is arbitrable is a question for the court,

unless, by appropriate language, the parties have agreed to arbitrate that question…"

Scinto v. Sosin, 51 Conn.App. 222, 227-28, 721 A.2d 552 (1998), cert. denied, 247 Conn.

963, 724 A.2d 1125 (1999); Bridgeport v. Bridgeport Police Local 1159, 183 Conn. 102,

104, 438 A.2d 1171 (1981).  By agreeing to submit the issue of arbitrability to the panel

of arbitrators of the SBMA, Bond and Correia and their union agreed to arbitrate the issue

of arbitrability rather than to have that issue decided by the state court.

Plaintiffs Schirillo and Benton are foreclosed from pursuing claims for breach of

contract in this lawsuit because they failed to exhaust the administrative remedies

available to them under the grievance procedures of their respective collective bargaining

agreements.  Where, as here, exclusive grievance and arbitration procedures apply, a

plaintiff alleging a breach of contract must attempt to exhaust those remedies before he

resorts to the court.  See Burnham v. Karl & Geld, P.C., 252 Conn. 153, 167 (2000);

Daley v. City of Hartford, 215 Conn. 14, 23, cert. denied, 498 U.S. 98, 111 S.Ct. 513, 112

L.Ed.2d 525 (1990)("Failure to exhaust the grievance procedure deprives the court of

subject matter jurisdiction.").  The purpose of the exhaustion requirement is to encourage

the use of grievance procedures, rather than the courts, for resolving disputes. "A

contrary rule which would permit an individual employee to completely side step

available grievance procedures in favor of a lawsuit has little to commend it…[I]t would

deprive employer and union of the ability to establish a uniform and exclusive method for

orderly settlement of employee grievances.  If a grievance procedure cannot be made

exclusive, it loses much of its desirability as a method of settlement.  A rule creating such

a situation would inevitably exert a disruptive influence upon both the negotiation and

administration of collective agreements." (Internal quotation marks omitted).  School

Administrators Assn v. Dow, 200 Conn. 376, 382 511 A.2d 1012 (1986).

       In Flynn v. Town of Newington, 2 Conn.App. 230, 237-38, 477 A.2d 1028, cert.

denied, 194 Conn. 804, 482 A.2d 709 (1984), the Connecticut Appellate Court held that

retired employees have no duty to exhaust arbitration procedures required by a collective

bargaining agreement before bringing a direct action for breach of contract against their

former employer.  However, the Flynn decision is distinguishable from the instant case.

There, the employee retired in 1974, and it was not until 1977 and thereafter that the

defendant allegedly breached the collective bargaining agreement by failing to pay

medical expenses to his wife.  In Flynn, the alleged breach occurred some three years

after the plaintiff retired.  By contrast, in the instant case, the occurrence and dispute

giving rise to the alleged violation of the collective bargaining agreement arose while the

plaintiffs were active employees. Instead of filing grievances within the 15-day time limit prescribed by the applicable collective bargaining agreement while they were active employees, the plaintiffs retired and then waited from two to four years after they retired before initiating their claims for breach of contract in this lawsuit. Under these circumstances, not requiring the plaintiffs to exhaust the exclusive grievance and arbitration procedures would enable them to completely circumvent those procedures and the contractually agreed to time limits for filing grievances.

**D.    Breach of Implied Covenant of Good Faith and Fair Dealing**

"Essentially, [the implied covenant of good faith and fair dealing] is a rule of construction design [to] fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract,…" (Internal quotation marks omitted) Southbridge Associates LLC v. Garofalo, 53 Conn.App. 11, 16, 728 A.2d 11, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999). In the context of this action, the plaintiffs' claims for breach of the implied covenants of good faith and fair dealing is coterminous with their breach of contract claims. As such, plaintiffs Bond and Correia are foreclosed from bringing said claims by reason of the prior final and binding arbitration awards and plaintiffs Schirillo and Brenton are foreclosed from bringing breach of contract claims in this court by reason of their failure to exhaust their administrative remedies.

Moreover, it is axiomatic that a union is the exclusive representative of all employees within its bargaining unit, and as such has a duty to fairly represent all members. Vaca v. Sipes, 386 U.S. 171 (1967); see, also Conn. Gen. Stats. §7-468(c)

which provides, in pertinent part, "When an employer organization has been designated in accordance with the provisions of Section 7-467 to 477, inclusive, as the exclusive representative of employees in an appropriate unit, it…shall be responsible for representing the interests of all such employees…"  As such, the union and union officials have a duty to advise their members of their rights under the collective bargaining agreement.  Management has no legal obligation to advise bargaining unit members of their rights to file grievances under the collective bargaining agreement. Indeed, a supervisory employee who so advised a union employee arguably would be in breach of his duty of loyalty to his employer.

**E.**    **Tortious Interference With Contract**

It is well settled under Connecticut law that there can be no tortious interference with contractual relations by someone who is directly or indirectly a party to the contract. Paint Buyers Co. v. Minwax Co., 448 F.Supp. 656, 658 (D.Conn.1978); Kecko Piping Co. v. Monroe, 172 Conn. 197, 201-202, 374 A.2d 179 (1977)  As supervisory agents and employees of the Town which was a party to the collective bargaining agreement, the individually named defendants cannot be considered strangers to the collective bargaining agreements at issue.  Accordingly, the Town, as a direct party to the collective bargaining agreements, and the individual defendants are entitled to summary judgment on the tortious interference with contractual relations claims.

III.    **CONCLUSION**

For all of the foregoing reasons, defendants Town of Stratford, Eileen Murphy,

Micheal Feeney, Dorinda Borer, Mark Barnhart, and Jack Obernesser respectfully request

this Court to grant their motion for summary judgment and dismiss this action.

Respectfully submitted on behalf of the
Moving Defendants

By: //s//_____
    Richard J. Buturla, Esq.
    Federal Bar No. ct 05967
    Warren L. Holcomb, Esq
    Federal Bar No. ct 13127.
    Berchem, Moses & Devlin, P.C.
    75 Broad Street
    Milford, CT  06460
    (203) 783-1200
    e-mail:  rbuturla@bmdlaw.com
    e-mail:  wholcomb@bmdlaw.com

18000\272\mol revised