UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| RICHARD SCHIRILLO, AUGUSTO CORREIA: RANDOLPH BOND, and RONALD BRENTON : : v. : : TOWN OF STRATFORD and in their : Individual capacities EILEEN MURPHY, : MICHAEL FEENEY, DORINDA BORER, : MARK BARNHART, JACK OBERNESSER, : MICHAEL SINGH, and SANDRA ZALIK : | Civil Action No. 303cv674 (WWE) September 30, 2004 |

---

**DEFENDANTS' LOCAL RULE 56(a)1 STATEMENT**

Pursuant to L.Civ.R. 56, defendants Town of Stratford, Eileen Murphy, Michael Feeney, Dorinda Borer and Mark Barnhart, for the purposes of their summary judgment motion, contend there is no genuine issue to be tried as to the following material facts:

1. Plaintiff, Randolph Bond was employed by the Town of Stratford in its Water Pollution Control Division for approximately 25 years from July 1, 1973 through August 7, 1998, the effective date of his retirement. For approximately 24 years he worked as a water treatment plant operator. (Amended Complaint, doc.# 14, ¶ 6; Answer, doc.# 16, ¶ 6; Affidavit of Eileen Murphy, ¶ 3)

2. During his employment with the Town, Bond was a member of a collective bargaining unit represented by the Stratford Public Works Employees Association Local No. 134, Affiliate of the International Federation of Professional and Technical Engineers, AFL-CIO-CLC. ("Association") (First Amended Complaint, ¶ 93; Answer, ¶ 93; Murphy Affidavit, ¶ 4)

3. Defendant Town of Stratford ("Town") is a Connecticut municipal corporation. (First Amended Complaint, ¶ 8; Answer, ¶ 8)

4. At all material times Defendant Eileen Murphy was the Insurance Coordinator for the Town of Stratford. (Murphy Affidavit, ¶ 2)

5. From July 1, 1992 to June, 2002, Defendant Mark Barnhart was the Town Manager for the Town of Stratford. (LoSchiavo Affidavit, ¶3)

6. From June 6, 2002 to July 8, 2002, Defendant Michael Feeney was the Acting Town Manager and from July 8, 2002 to July 16, 2004 was the Town Manager Town for the Town of Stratford. (LoSchiavo Affidavit, ¶4)

7. From April 16, 1990 to April 26, 2002 Defendant Jack Obernesser was the Director of Human Resources for the Town. (LoSchiavo Affidavit, ¶5)

8. At all material times from and after September 2, 2002, Defendant Dorinda Borer was, the Director of Human Resources for the Town. (LoSchiavo Affidavit, ¶6)

9. The Town and the Association were parties to a collective bargaining agreement that was in effect from July 1, 1997 through June 30, 2000 (the "Public Works Agreement). (Murphy Aff. ¶ 5, Ex. A)

10. Section 13.3 of the Public Works Agreement provided: "Effective April 1, 1974, the Municipality shall provide all members of the bargaining unit with the hypertension or heart disease benefits mandated for municipal fire and police personnel under P.A. [71-] 524 under the same terms and conditions as set forth in said Public Act provided; however, that any new employee hired on or after November 1, 1978 shall not be eligible for hypertension or heart disease benefits; provided, however, there shall be a rebuttable presumption as to

whether any such health condition or impairment arose out of or in the course of employment." (Amended Complaint ¶ 94; Answer ¶ 94; Murphy Aff. ¶ 6, Ex. A)

11. Public Act 71-524 was codified as § 7-433c of the Connecticut General Statutes. (Murphy Aff. ¶ 7)

12. At all relevant times, §7-433c(a) of the Connecticut General Statutes provided in relevant part:

> "… in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his … temporary or permanent, total or partial disability, he… shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such… disability was caused by personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal … retirement system under which he is covered, he… shall receive the same retirement… which would be paid under said system if such… disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment…. The benefits provided by this section shall in lieu of any other benefits which such policeman or fireman… may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal… retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his… temporary or permanent, total or partial disability…."

13. Chapter 568 referred to in Conn. Gen. Stat. §7-433c is the Connecticut Workers' Compensation Act, §§ 31-275 through 31-355b of the Connecticut General Statutes. (Murphy Aff. ¶ 9)

14. On or about February 5, 1997, Bond's attorney notified the Town by letter of Bond's claim for heart and hypertension benefits under General Statutes §7-433c as provided in the

collective bargaining agreement between the Union and the Town. (Murphy Aff. ¶ 11, Ex. C)

15. On or about February 11, 1997, the Town denied Bond's claim for heart and hypertension benefits by sending his attorney, by certified mail, a Form 43 Notice of Intention to Contest Liability to Pay Compensation. (Murphy Aff. ¶ 12, Ex. D)

16. The Town did not pay Bond any heart and hypertension benefits provided in chapter 568 pursuant to §13.3 of the Agreement. (Murphy Aff. ¶ 13)

17. Section 17.1 of the grievance and arbitration provisions of the Union Agreement defines a "grievance" as "any dispute between the Municipality and the Association or between the Municipality and any employee or group of employees concerning the interpretation, application or violation of the provisions of this Agreement." (Murphy Aff. ¶ 14, Ex. A)

18. Under the grievance and arbitration provisions of the Union Agreement, grievances are processed through a number of preliminary steps to progressively higher Town management, and if not resolved, the dispute may be submitted to arbitration before a panel of the State Board of Mediation and Arbitration. (Murphy Aff. ¶ 15, Ex. A)

19. The decision of the arbitration panel is final and binding on both parties, subject to the parties' statutory rights under Connecticut General Statutes § 52-417 and 52-418 to file an application to modify or vacate the arbitration award. (Murphy Aff. ¶ 16)

20. Section 17.1 of the Agreement provides that "[n]o matter shall be submitted to grievance unless taken up with fifteen (15) working days of its most recent occurrence." (Murphy Aff. ¶ 17, Ex. A)

21. On April 3, 1998, a written grievance was filed by the Association on behalf of Bond alleging that the Town had violated §13.3 by not paying heart and hypertension benefits

under the same terms and conditions as General Statutes §7-433c. (Murphy Aff. ¶ 18, Ex. E)

22. Bond's grievance was denied at the several preliminary steps of the grievance procedure and was submitted to arbitration before a three-member panel of arbitrators at the State Board of Mediation and Arbitration. The arbitration hearing was held on February 15, 2000. (Murphy Aff. ¶19)

23. On April 18, 2000, a unanimous panel, based on a finding that the grievance was untimely, held that Bond's grievance was not arbitrable. (Murphy Aff. ¶20, Ex. G)

24. The Union filed an application to vacate the award in the Connecticut Superior Court which, after hearing, was denied by the court on November 8, 2000. (Murphy Aff. ¶21, Ex. H)

25. Bond pursued a claim for Chapter 568 benefits and for §7-433c heart and hypertension benefits before the Connecticut Workers' Compensation Commission. (Murphy Aff. ¶22, Ex. I)

26. At the formal hearing on March 4, 1998, Bond withdrew with prejudice his claim before the Workers' Compensation Commission for §7-433c heart and hypertension benefits. (Ex. I)

27. Pursuant to the finding and award of Commissioner Wilson issued on December 13, 1999, Bond's heart and hypertension condition was found to be a compensable injury under the Connecticut Workers' Compensation Act and Bond was awarded compensation and medical care benefits provided under chapter 568 of the Connecticut General Statutes. (Murphy Aff. ¶23, Ex. I)

28. On appeal to the Workers' Compensation Board, the December 13, 1999 finding and award of Commissioner Wilson was affirmed. (Murphy Aff. ¶24, Ex.. J)

29. Pursuant to the December 13, 1999 finding and award, Bond has received all benefits he is

entitled to under the provisions of chapter 568 of the Connecticut General Statutes. (Murphy Aff. ¶25, Ex. K)

30. Effective April 3, 1998, Bond retired from his employment with the Town. In August 1998, Bond's superannuation retirement was converted to a disability retirement. Since his retirement, Bond has received disability pension benefits pursuant to the provisions of the Stratford Pension Plan, as amended. (Murphy Aff. ¶27, Ex. M)

31. The disability pension Bond was granted is the same disability pension granted to an employee whose disability was caused by a personal injury which arose out of and in the course of employment and was suffered within the scope of his or her employment. (Murphy Aff. ¶28, Ex. L)

32. The Town Pension Board has the authority to award a disability pension but does not have the authority to award contractual benefits pursuant to §13.3 of the Union Agreement in the form of compensation and medical care in the same amount and the same manner as that provided under the chapter 568. (Murphy Aff. ¶29, Ex. L)

**AUGUSTO CORREIA**

33. Defendant Augustus Correia ("Correia") was employed by the Town as a treatment plant operator at the Town's water pollution control facility from December 28, 1972 until May, 1998, the effective date of his retirement. (Complaint, ¶¶ 5 and 55); (Murphy Aff. ¶30).

34. During his employment with the Town, Correia was a member of a collective bargaining unit represented by the Union. (Complaint ¶ 93; Answer, ¶ 93) (Murphy Aff. ¶3)

35. On or about July 21, 1997, Correia, through his attorney, notified the Town that he was requesting heart and hypertension benefits pursuant to §13.3 of the Union Agreement.

(Correia depo. pages 19, 23; Murphy Aff. ¶32, Ex. N)

36. On or about July 25, 1997, the Town denied Correia's claim for heart and hypertension benefits by mailing to his attorney a Form 43 Notice of Intention to Contest Liability. (Murphy Aff. ¶33, Ex. O)

37. On or about April 3, 1998, Correia applied to the Town Pension Board for a work-related disability pension under the Union Agreement. (Murphy Aff. ¶34, Ex. P)

38. On or about April 6, 1998, Correia (or his Union on behalf of Correia) filed a written grievance alleging that the Town had violated §13.3 of the Union Agreement by not providing him with heart and hypertension benefits under that section. (Murphy Aff. ¶35, Ex. Q)

39. Correia's grievance was denied at the several preliminary steps of the grievance procedure and was submitted to arbitration before a three-member panel of arbitrators of the State Board of Mediation and Arbitration. (Murphy Aff. ¶36)

40. On April 18, 2000, a unanimous panel, based on a finding that the grievance was untimely, held that Bond's grievance was not arbitrable. (Murphy Aff. ¶37, Ex. R)

41. The Union filed an application to vacate the award in the Connecticut Superior Court, and on November 8, 2000 the court denied the Union's motion to vacate the award. (Murphy Aff. ¶38, Ex. S)

43. The Town did not pay Correia pursuant to §13.3 of the Agreement any of the same heart and hypertension benefits as provided in chapter 568. (Murphy Aff. ¶39)

**RICHARD SCHIRILLO**

44. Plaintiff Schirillo was employed by the Town for 35 years from 1966 until February 22, 1999, the effective date of his retirement. For approximately the first two years he worked in the Highway Division and for the next 33 years worked as a plant operator at the Town's water pollution control facility. (Complaint ¶¶ 4 and 16, Schirillo depo. pages 5 & 6).

45. On or about October 26, 1997, Schirillo filed a Workers' Compensation First Notice of Injury (Form 30C) requesting heart and hypertension benefits as set forth in P.A. 71-524 (Connecticut General Statutes §7-433c). (Murphy Aff. ¶41, Ex. T)

46. On or about November 9, 1998, the Town denied Schirillo's claim for heart and hypertension benefits by sending his attorney, by certified mail, a Form 43 Notice of Intention to Contest Liability to Pay Compensation. (Murphy Aff. ¶42, Ex. U)

47. After the Town denied his Workers' Compensation claim, Schirillo was told by his Union representative that he did not valid grounds to file a grievance for contractual benefits under §13.3 of the Union Agreement. (Schirillo depo., pages 8-10, 20, 21, & 24)

48. At a Workers' Compensation hearing, Commissioner Paoletta stated that the Connecticut Workers' Compensation Commission did not have jurisdiction over a contractual claim for benefits under §13.3 of the Union Agreement. (Schirillo depo., pages 12 & 18).

49. After Schirillo learned of the Commissioner's position that the Connecticut Workers' Compensation Commission did not have jurisdiction over his claim for benefits under §13.3 of the Union Agreement, he again spoke to his Union representatives and was again told that he had no grounds to file a grievance for such benefits. (Schirillo depo., p. 18)

50. The Town never provided Schirillo under §13.3 of the Union Agreement any of the same heart and hypertension benefits as provided in chapter 568. (Murphy Aff. ¶43)

51. Neither Schirillo nor his Union ever filed a grievance for the Town's failure to provide him with benefits under §13.3 of the Agreement. (Schirillo Depo page 15; Murphy Aff. ¶44)

52. Schirillo had been a Union steward and understood the grievance process.

**RONALD BRENTON**

53. Plaintiff Ronald Brenton was employed by the Town as a superintendent at the Town's water pollution control facility from 1972 to January 2001, when he retired. (Complaint, ¶¶ 7 & 121; Murphy Aff. ¶45).

54. During his employment with the Town, Bond was a member of a collective bargaining unit represented by the Town of Stratford Supervisors' Union Local 3804, Council 4, AFSCME AFL-CIO (the "Supervisors' Union"). (Complaint ¶ 93; Answer ¶ 93; Murphy Aff. ¶46)

55. The Town and the Supervisors' Union were parties to a collective bargaining agreement that was in effect from July 1, 1997 through June 30, 2000 (the Supervisors' Agreement). (Murphy Aff. ¶47, Ex. V)

56. On May 10, 1999, Brenton applied for heart and hypertension benefits under Article 10, §2 of the Supervisors' Agreement. (Brenton depo pp. 8, 13 & 14;)

57. On or about May, 1999, the Town denied Brenton's claim by filing and sending his attorney a Form 43 Notice of Intention to Contest Liability to Pay Compensation. (Murphy Aff. ¶51)

58. Section 15.1 of the grievance procedure provision of the Supervisors' Agreement defines a "grievance" as "any dispute which may arise between the parties concerning the application,

meaning, or interpretation of this Agreement." (Murphy Aff. ¶48, Ex. V)

59. Under the grievance procedure provision of the Supervisors' Agreement, grievances are processed through a number of preliminary steps to progressively higher Town management, and if not resolved, the dispute may be submitted to arbitration before a panel of arbitrators of the State Board of Mediation and Arbitration. (Murphy Aff. ¶49, Ex. V)

60. The decision of the arbitration panel is final and binding on both parties, subject to the parties' statutory rights under Connecticut General Statutes §52-417 and 52-418 to file an application to modify or vacate the award. (Murphy Aff. ¶49, Ex. V)

61. Section 15.1(a) of the Supervisors' Agreement provides that "The Union, through its Grievance Committee, shall present the grievance in writing to the Department Head within fifteen (15) days of the date on which the grievance or dispute arose." (Murphy Aff. ¶50, Ex. V)

62. Brenton was familiar with the grievance and arbitration provisions of the Supervisors' Agreement. (Brenton depo., p. 12)

63. Brenton admitted that the benefits provided by §10.2 of the Agreement were contractual benefits. (Brenton depo., p. 18)

64. Brenton admitted that his recourse for an alleged breach of a provision of the Supervisors' Agreement was to file a grievance pursuant to the grievance and arbitration provisions of that agreement. (Brenton depo., p. 19)

65. Neither Brenton nor his Union filed a grievance challenging the Town's denial and failure to provide him with heart and hypertension benefits under Article 10, §2 of the Supervisor's Agreement. (Murphy Aff. ¶52)

66. Brenton did not have any conversation with Murphy about his filing a claim for heart and hypertension benefits against the Town. (Brenton depo. p. 20;)

67. Brenton never received from the Town under Article 10, §2 of the Supervisors' Agreement any of the same heart or hypertension benefits as provided in chapter 568. (Brenton depo pp. 22 & 23)

            THE DEFENDANTS
            TOWN OF STRATFORD, EILEEN MURPHY,
            MICHAEL FEENEY, DORINDA BORER,
            MARK BARNHART and JACK OBERNESSER


            _____
            Richard J. Buturla, Esq.
            Federal Bar No. ct 05967
            Warren L. Holcomb, Esq
            Federal Bar No. ct 13127.
            Berchem, Moses & Devlin, P. C.
            75 Broad Street
            Milford, CT   06460
            (203) 783-1200
            e-mail: rbuturla@bmdlaw.com
            e-mail: wholcomb@bmdlaw.com