UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| **RICHARD SCHIRILLO, AUGUSTO CORREIA,** : | Civil Action No. |
| **RANDOLPH BOND and RONALD BRENTON** : | 303cv674 (WWE) |
| : | |
| **v.** : | |
| : | |
| **TOWN OF STRATFORD and in their** : | |
| **individual capacities EILEEN MURPHY,** : | |
| **MICHAEL FEENEY, DORINDA BORER,** : | |
| **MARK BARNHART, JACK OBERNESSER,** : | September 30, 2004 |
| **MICHAEL SINGH, and SANDRA ZALIK** : | |

---

## AFFIDAVIT OF EILEEN MURPHY

I, Eileen Murphy, being duly sworn, depose and say:

1. I am over the age of eighteen (18) and believe in the obligation of an oath.

2. I am named as a defendant in the above-captioned lawsuit. I have been continuously employed by the Town of Stratford for 21 years and for approximately 17 years I have worked in the position of Insurance Coordinator. I report to the Director of Human Resources. My responsibilities as Insurance Coordinator include administering the Town's self-insured program for Workers' Compensation by administering workers' compensation claims in conjunction with the Town's third party administer. I also administer claims for heart or hypertension benefits filed by members of the police and fire department pursuant to Connecticut General Statute Section 7-433c, and claims for contractual heart or hypertension benefits filed by union employees under the provisions in various collective bargaining agreements. In addition, I

act as a liaison between the Town administration and the Town Pension Board and the Disability Review Board.

3. For many years, Plaintiff Randolph Bond was employed by the Town of Stratford as a water treatment plant operator in its Water Pollution Control Division. Mr. Bond retired effective August 7, 1998, and is deceased.

4. During his employment with the Town, Bond was a member of a collective bargaining unit represented by the Stratford Public Works Employees Association Local No. 134, Affiliate of the International Federation of Professional and Technical Engineers, AFL-CIO-CLC. (hereinafter 'the Association")

5. The Town and the Association were parties to a collective bargaining agreement that was in effect from July 1, 1997 through June 30, 2000 (hereinafter the "Association Agreement"). True and exact copies of relevant excerpts from that agreement are attached as Exhibit A. A successor collective bargaining agreement is now in effect between the Town and the Association.

6. Section 13.3 of the Association Agreement provided: "Effective April 1, 1974, the Municipality shall provide all members of the bargaining unit with the hypertension or heart disease benefits mandated for municipal fire and police personnel under P.A. [71-] 524 under the same terms and conditions as set forth in said Public Act provided; however, that any new employee hired on or after November 1, 1978 shall not be eligible for hypertension or heart disease benefits; provided, however, there shall be a rebuttable presumption as to whether any such health condition or impairment arose out of or in the course of employment." (Exhibit A)

7. Public Act 71-524 was codified as § 7-433c of the Connecticut General Statutes.

8.  At all relevant times, §7-433c(a) of the Connecticut General Statutes provided in relevant part:

> "… in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his … temporary or permanent, total or partial disability, he… shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such… disability was caused by personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal … retirement system under which he is covered, he… shall receive the same retirement… which would be paid under said system if such… disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment…. The benefits provided by this section shall in lieu of any other benefits which such policeman or fireman… may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal… retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his… temporary or permanent, total or partial disability…."

9.  Chapter 568 is a reference to the Connecticut Workers' Compensation Act, §§ 31-275 through 31-355b of the Connecticut General Statutes.

11. On or about February 5, 1997, Bond's attorney notified the Town by letter of Bond's claim for heart and hypertension benefits under General Statutes §7-433c as provided in the collective bargaining agreement between the Association and the Town. A true copy of that letter is attached as Exhibit C.

12. On or about February 11, 1997, the Town denied Bond's claim for heart and hypertension benefits by sending his attorney, by certified mail, a Form 43 Notice of Intention to Contest Liability to Pay Compensation, a true copy of which is attached as Exhibit. D.

13. The Town did not pay Bond any heart and hypertension benefits provided in chapter 568 pursuant to §13.3 of the Association Agreement.

14. Section 17.1 of the grievance and arbitration provisions of the Association Agreement defines a "grievance" as "any dispute between the Municipality and the Association or between the Municipality and any employee or group of employees concerning the interpretation, application or violation of the provisions of this Agreement." (Exhibit A)

15. Under the grievance and arbitration provisions of the Association Agreement, grievances are processed through a number of preliminary steps to progressively higher Town management, and if not resolved, the dispute may be submitted to arbitration before a panel of the State Board of Mediation and Arbitration. Id.

16. The decision of the arbitration panel is final and binding on both parties, subject to the parties' statutory rights under Connecticut General Statutes §§ 52-417 and 52-418 to file an application to modify or vacate the arbitration award. Id.

17. Section 17.1 of the Agreement provides that "[n]o matter shall be submitted to grievance unless taken up with fifteen (15) working days of its most recent occurrence." Id.

18. On April 3, 1998, written grievance no. 017-98 was filed by the Association on behalf of Bond alleging that the Town had violated §13.3 by not paying heart and hypertension benefits mandated by Public Act 71-524 (General Statutes §7-433c). A true and exact copy of grievance no. 017-98 is attached as Exhibit E.

19. Either Bond's grievance was denied at the several preliminary steps of the grievance procedure or the parties waived the preliminary steps, and grievance no. 017-98 was submitted to arbitration before a three-member panel of arbitrators at the State Board of

Mediation and Arbitration (SBMA) as SBMA Case # 9798-A-1265.  I am informed and believe that the Town raised the issue of arbitrability so that issue was heard first by the arbitration panel.  A copy a notice entitled "Arbitrability Hearing" dated January 20, 2000 from the State Board of Mediation and Arbitration is attached as Exhibit F.

20. On April 18, 2000, a unanimous panel, based on a finding that the grievance was untimely, issued an award that "[t]he grievance of Randolph Bond is not arbitrable."  A true and exact copy of the award is attached as Exhibit G.

21. The Union filed an application to vacate the award in the Connecticut Superior Court which, after a hearing, was denied by the court on November 8, 2000.  A true and exact copy of the Memorandum of Decision on Application to Vacate Arbitration Award dated November 8, 2000 in <u>IFPTE, Local 134 v. Town of Stratford</u>, Connecticut Superior Court, Judicial District of Fairfield at Bridgeport , Civil Case No. CV000374843S is attached as Exhibit H.

22. Mr. Bond pursued a claim for Chapter 568 benefits and for §7-433c heart and hypertension benefits before the Connecticut Workers' Compensation Commission.  Based on the Commissioner's finding and award dated December 13, 1999, at the formal hearing on March 4, 1998, Mr. Bond, who was represented by counsel, withdrew with prejudice his claim before the Workers' Compensation Commission for §7-433c heart and hypertension benefits. (Exhibit I, p. 5, ¶31)

23. Pursuant to the finding and award of Commissioner Wilson issued on December 13, 1999, Randolph Bond's heart and hypertension condition was found to be a compensable injury under the Connecticut Workers' Compensation Act and Bond was awarded compensation

and medical care benefits provided under chapter 568 of the Connecticut General Statutes. A true copy of the Finding and Award of Compensation dated December 13, 1999 in State of Connecticut Workers' Compensation Commission File No. 400028575 is attached as Exhibit I)

24. On appeal to the Workers' Compensation Board, the December 13, 1999 finding and award of Commissioner Wilson was affirmed. A true copy of the Opinion of the Compensation Review Board dated March 7, 2001 in Case No. 4167 CRB-4-99-12 is attached as Exhibit J.

25. Pursuant to the December 13, 1999 finding and award, Bond has received all benefits he is entitled to under the provisions of chapter 568 of the Connecticut General Statutes. Attached as Exhibit K is a true copy of a letter I sent to Mr. Bond c/o his attorney enclosing the first check in partial payment of Chapter 568 benefits.

26. The Town of Stratford has a retirement plan ordinance which defines the scope of the authority conferred on the Town Pension Board. At all times relevant times, the Pension Board has consisted of seven members appointed by the Town Council and six employee group representatives. The retirement plan ordinance that was in effect for many years until January 11, 1999 provided for three types of retirements, namely, superannuation (regular) retirement, disability retirement in the line of duty, and disability retirement not in the line of duty. A copy of Stratford Code § 25-24 of the prior retirement ordinance that was in effect until January 11, 1999 is attached as Exhibit L. The Retirement Plan for the Town of Stratford in effect since January 11, 1999 also provides for the above three types of retirements.

27. Effective April 3, 1998, Bond retired from his employment with the Town. In August 1998, Bond's superannuation retirement was converted to a disability retirement. A true

copy of the minutes of the meeting of the Town of Stratford Pension Board on August 5, 1998 indicating that Randolph Bond was granted a disability in the line of duty retirement is attached as Exhibit M.  Since his retirement, Mr. Bond received disability pension benefits pursuant to the provisions of the Stratford Retirement Plan, as amended.

28.     The disability pension that was granted to Mr. Bond is the same disability pension granted to an employee whose disability was caused by a personal injury which arose out of and in the course of employment and was suffered within the scope of his or her employment.  (see Exhibit L)

29.     To the best of my knowledge and belief, the Town Pension Board has the authority to award a disability pension but does not have the authority to award contractual benefits pursuant to §13.3 of the Union Agreement in the form of compensation and medical care in the same amount and the same manner as that provided under the Chapter 568, and I have never told any employee that the Pension Board has such authority.

30.     Defendant Augustus Correia ("Correia") was employed by the Town as a treatment plant operator at the Town's water pollution control facility for many years until May, 1998, the effective date of his retirement.

31.     During his employment with the Town, Correia was a member of a collective bargaining unit represented by the Association.

32.     On or about July 21, 1997, Correia, through his attorney, notified the Town that he was requesting heart and hypertension benefits pursuant to §13.3 of the Union Agreement. A true copy Attorney Baldwin's letter to the Town dated July 21, 1997 is attached as Exhibit N.

33. On or about July 25, 1997, the Town denied Correia's claim for heart and hypertension benefits by mailing to his attorney a Form 43 Notice of Intention to Contest Liability, a true copy of which is attached as Exhibit O.

34. On or about April 3, 1998, Correia, through his attorney, applied to the Town Pension Board for a work-related disability pension under the Union Agreement. A true copy of that letter is attached as Exhibit P.

35. On or about April 6, 1998, the Association filed a grievance on behalf of Correia alleging that the Town had violated §13.3 of the Association Agreement by not providing him with heart and hypertension benefits under that section. A true copy of grievance no. 018-98 is attached as Exhibit Q.

36. Either Correia's grievance was denied at the several preliminary steps of the grievance procedure or the parties waived the preliminary steps, and grievance no. 018-98 was submitted to arbitration before a three-member panel of arbitrators at the State Board of Mediation and Arbitration (SBMA) as SBMA Case # 9798-A-1264. I am informed and believe that the Town raised the issue of arbitrability so that issue was heard first by the arbitration panel.

37. On April 18, 2000, a unanimous panel, based on a finding that the grievance was untimely, issued an award that "[t]he grievance of Gus Correia is not arbitrable." A true and exact copy of the award is attached as Exhibit R.

38. The Union filed an application to vacate the award in the Connecticut Superior Court which, after hearing, was denied by the court on November 8, 2000. A true and exact copy of the Memorandum of Decision on Application to Vacate Arbitration Award dated

November 8, 2000 in <u>IFPTE, Local 134 v. Town of Stratford</u>, Connecticut Superior Court, Judicial District of Fairfield at Bridgeport, Civil Case No. CV000374842S is attached as Exhibit S.

39. The Town did not pay Correia pursuant to §13.3 of the Agreement any of the same heart or hypertension indemnity, medical or other benefits as provided in Chapter 568 of the Connecticut General Statutes.

40. Plaintiff Schirillo was employed by the Town for many years as a plant operator at the Town's water pollution control facility. He retired on February 22, 1999.

41. On or about October 26, 1998, Schirillo filed a Workers' Compensation First Notice of Injury (Form 30C) requesting heart benefits, a true copy of which is attached as Exhibit T.

42. On or about November 9, 1998, the Town denied Schirillo's claim for heart and hypertension benefits by sending his attorney, by certified mail, a Form 43 Notice of Intention to Contest Liability to Pay Compensation, a true copy of which is attached as Exhibit U.

43. The Town never provided Schirillo under §13.3 of the Union Agreement any of the same heart or hypertension benefits as provided in Chapter 568.

44. Neither Schirillo nor his Union ever filed a grievance for the Town's failure to provide him with benefits under §13.3 of the Agreement.

45. Plaintiff Ronald Brenton was employed by the Town for many years as a superintendent at the Town's water pollution control facility until January 2001, when he retired.

46. During his employment with the Town, Brenton was a member of a collective bargaining unit represented by the Town of Stratford Supervisors' Union Local 3804, Council 4, AFSCME AFL-CIO (the "Supervisors' Union").

47. The Town and the Supervisors' Union were parties to a collective bargaining agreement that was in effect from July 1, 1997 through June 30, 2000 (the Supervisors' Agreement). A true and exact copy of relevant excerpts from that agreement is attached as Exhibit V. A successor collective bargaining agreement is now in effect.

48. Section 15.1 of the grievance procedure provision of the Supervisors' Agreement defines a "grievance" as "any dispute which may arise between the parties concerning the application, meaning, or interpretation of this Agreement." (Id.)

49. Under the grievance procedure provision of the Supervisors' Agreement, grievances are processed through a number of preliminary steps to progressively higher Town management, and if not resolved, the dispute may be submitted to arbitration before a panel of arbitrators of the State Board of Mediation and Arbitration. The decision of the arbitration panel is final and binding on both parties. (Exhibit Id.)

50. Section 15.1(a) of the Supervisors' Agreement provides that "The Union, through its Grievance Committee, shall present the grievance in writing to the Department Head within fifteen (15) days of the date on which the grievance or dispute arose." Id.

51. The Town denied Brenton's request for heart benefits and did not provide him under Article 10, §2 of the Supervisors' Agreement or otherwise with any of the same heart or hypertension benefits as provided in Chapter 568 of the Connecticut General Statutes.

52. The Supervisors' Union did not file a grievance challenging the Town's denial and failure to provide him with heart and hypertension benefits under Article 10, §2 of the Supervisor's Agreement.

53. To the best of my recollection, I did not discuss any of my decisions to deny the requests made by the plaintiffs for heart and hypertension benefits under the provisions of their respective collective bargaining agreements with Michael Feeney, Dorinda Borer, Mark Barnhart or Jack Obernesser. None of those defendants participated in the decisions to deny the plaintiffs' requests for such contractual benefits.

54. I declare under penalty of perjury that all of the foregoing, except for those matters expressly stated as being based on information and belief, are based upon my first-hand personal knowledge, and if called as a witness, I could, and would, competently testify thereto.

_____
Eileen Murphy

Subscribed and sworn to before me this 30th day of September, 2004.

_____
Notary Public