**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RICHARD      SCHIRILLO,      AUGUSTO
CORREIA, RANDOLPH BOND, and
RONALD BRENTON

<div align="center">Plaintiffs,</div>

<div align="center">Vs.</div>

CIVIL ACTION NO. 3:03CV674(WWE)

TOWN OF STRATFORD, and in their
individual and official capacities EILEEN
MURPHY,      MICHAEL      FEENEY,
DORINDA BORER, MARK BARNHART,
JACK OBERNESSOR, MICHAEL SINGH,
and SANDRA ZALIK

<div align="center">Defendants.</div>

February 11, 2005

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PlAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGEMENT**

## I.    PRELIMINARY STATEMENT

When they began working for the Town of Stratford each Plaintiff received a physical exam which showed no evidence of hypertension or heart disease. Subsequently, and during their time of employment with the Town, each Plaintiff developed heart disease and/or hypertension illnesses. Prior to his retirement, Mr. Schirillo underwent triple by-pass surgery for heart disease. Prior to his retirement Mr. Correia underwent angioplasty for heart disease, and prior to Mr. Brentons' retirement he was diagnosed with high blood pressure and arrhythmia. Ultimately, each Plaintiff retired from his job at the Water Pollution Facility because of his heart or hypertension related illness.

<div align="center">1</div>

From the time of their hire, until their date of retirement, Mr. Schirillo and Mr. Correia were members of the collective bargaining unit represented by the Stratford Public Works Employees Association Local No. 134, affiliate of the International Federation of Professional and Technical Engineers AFL-CIO-CLC. Mr. Brenton was a member of the collective bargaining unit represented by the Town of Stratford Supervisors' Union Local No. 3894, Council 4, AFSCME' AFL-CIO. Under the special pension provisions contained in their respective collective bargaining agreements ("CBAs") with the Town, the Plaintiffs were entitled to the same hypertension and heart disease benefits afforded to fire and police personnel under Public Act [71]-524 (C.G.S. §7-433c).

"ARTICLE 13 – PENSIONS," of the Public Works CBA in relevant part reads:

> Section 13.1  Pension Benefits shall be granted in accordance with "An Act Concerning Pensions for Employees of the Town of Stratford" dated April 9, 1970, with the following Amendment:…
>
> Section 13.3. Effective April1, 1974, the municipality shall provide all members of the bargaining unit with the hypertension or heart disease benefits mandated for municipal fire and police personnel under P.A. 524 under the same terms and conditions as set forth in said Public act provided, however, that any new employee hired on or after November 1, 1978 shall not be eligible for hypertension or heart disease benefits.

(Ex. 11)(emphasis added).

"ARTICLE 10 PENSIONS" of the Supervisors' CBA in relevant part reads:

> Section 1  Pension benefits shall be granted in accordance with anAct Concerning Pensions for Employees of the Town of Stratford, dated April 8, 1970 with the following amendment:...
>
> Section 2  All present members of the Bargaining Unit who are members of the Pension Plan shall be subject to all of the Provisions of 1971 P.A. 524 under the same terms and conditions set forth in said Public Act for Municipal Police and Fire Personnel.  Any employee who is hired after August 17, 1979 shall not be eligible for this benefit.

(Ex. 11) (Emphasis added).

P.A. 71-524, codified as C.G.S.s 7-433c states:

> Notwithstanding any provision of chapter 568 or any other general statute, charter special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependants, as the case my be, <u>shall receive from his municipal employer compensation and medical care in the same amount an the same manner as that provided under Chapter 568</u> if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependants, as the case may be, shall receive the same retirement or survivors benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems.

(Ex. 8)(emphasis added)

In short, under §13.3 and §10.2 of the CBAs and pursuant to §7-433c, the Plaintiffs were automatically entitled to workers' compensation and medical care benefits in the same amount an the same manner as that provided under Chapter 568 if they began employment without hypertension and/or heart disease and then developed hypertension or heart disease during their employment for the Town. The plaintiffs assert that because the Town awarded each one of them a work-related disability pension on the basis of their heart and hypertension claim and pursuant to these CBA provisions, they are automatically entitled to the Chapter 568 benefits that the Town, through the defendants, has denied them.

From the onset of their illnesses, it was unclear as to how or with whom the Plaintiffs had to proceed to collect the Chapter 568 benefits provided in the special pension sections of their respective CBAs. Rather than clarifying the procedure for the Plaintiffs, the Defendants deliberately confused, misdirected or ignored them in this effort. Following the same procedures required for

police and fire to collect under §7-433c, Mr. Schirillo filed a notice of claim for the special heart and hypertension benefits on or about October 26, 1998. Mr. Correia filed a notice of claim on or about July 21, 1997 and Mr. Brenton filed a notice of claim on or about May 11, 1999.

Each of the Plaintiffs claims for §13.3 benefits was uniformly and automatically denied by the Town. According to Ms. Murphy it is Town policy to deny all Workers Compensation claims within 28 days. All three denials were issued in accordance with procedures set forth in the workers' compensation Act and on forms issued by the Workers' Compensation Commission. (Ex. 0; Ex. U; Ex. 23).

In keeping with the procedures set out under chapter 568 the Plaintiffs Schirillo and Correia pursued their claims before the Worker's Compensation Commission. Those claims were ultimately dismissed or voluntarily withdrawn based on the Town's assertion that the Commission lacked subject matter jurisdiction over the special pension benefits provided by the Town to certain of its employees. (Town's Motion to Dismiss, Ex 25)

Mr. Correia, looking for a forum in which he could appeal the Town's Chapter 568 benefit denial, filed a grievance against the Town pursuant to §17 of the CBA.. In the course of the step grievance procedure, the Town Manager denied his claim on the basis that the benefits he was seeking "pertain[ed] to retirement benefits, the award of which are at the sole discretion of the Retirement Board." (Barnhart Memorandum, Ex. 1). Defendants further claimed Mr. Correia's grievance was untimely since it was not filed within 15 days from the denial of benefits as allegedly required under the Grievance procedure of the CBA, notwithstanding the fact that such procedures were radically different from those afforded to police and fire under §7-433c. The Town's denial was ultimately affirmed in arbitration before the State Board of Mediation and Arbitration which dismissed the claim as not arbitrable *on these grounds.*

Mr. Schirillo attempted to file a grievance with the Town but was told by Ms. Murphy (who was also on the executive board of the Union and chairman of its grievance committee) , his Union representative and ?  that he could not pursue an appeal of the Towns denial under the grievance procedures set out under s17 of the CBA. He then learned about Mr. Correia's grievance dismissal and the 15 day limitation and thought any further action under the CBA would be futile.

The heart and hypertension benefits plaintiffs' seek are provided through the defendant Town of Stratford's Retirement Plan (the Plan) (formerly §25-22 through §22-35 of the Town Code and, effective January 1, 1999, now §25-22), as amended by the Pension Provisions of their respective Collective Bargaining Agreements.  Pursuant to Section X of the Town's Pension Code, the Retirement Board, a.k.a. Pension Board, is responsible for the general administration of pensions as set forth in the code and as amended by the collective bargaining agreements. (6/98 letter from Town Manager Mark Barnhart stating the Retirement Board is the proper forum, Ex.1; The Town Pension Code, Ex..2; Collective Bargaining Agreements, Ex.11).  All the plaintiffs were awarded work-related disability pensions *based on* their respective claims for heart and hypertension benefits filed with the Retirement Board.  The Retirement Board's decision notwithstanding, the Town has steadfastly refused them the Chapter 568 compensation and medical care in the same amount and the same manner as that provided to Police and Fire under §7-433c.

Since the Defendants unlawfully and intentionally denied the Plaintiffs hypertension and heart disease benefits guaranteed under the CBA the Plaintiffs joined to file this action. Defendants have moved for summary judgment. The Defendants motion should be dismissed because there are material issues of fact in dispute.

II.    **Standard of Review**

Practice book §17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". A material fact is one that would alter the outcome of the case. Hammer v. Lumberman's Mutual Casualty co., 214 Conn. 573, 578, 573A.2d 699 (1990) ; Budris v. Allstate Ins. Co., 44 Conn.App 53, 56, 686A.2d 386 (1996). The trial court, in deciding a motion for summary judgment, must view the evidence in a light most favorable to the nonmoving party. Mingachos v. CBS, Inc., 196 Conn. 91,111,491 A.2d 368 (1985). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Connell v. Colwell, 214 Conn. 242, 246-7, 571 A.2d 116 (1990). The party seeking summary judgment has the burden of presenting evidence showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law, and the party opposing the motion must provide an evidentiary foundation to demonstrate a genuine issue over a material fact actually exists. Bruttomesso v. Northeastern Connecticut Sexual Assault Crisis Services, Inc 242 Conn.. 1, 5-6, 698 A.2d 795 (1997).

In this case the motion for summary judgment should be dismissed since there are material questions of facts involving the defendants intent, ability, and obligation to comply with the provisions of §13.3 under the colletive bargaining agreement. "Summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with the question of motives, intent or subjective feelings or reactions." Batick v. Seymour 186 Conn. 532, 443 A.2d 471 (1982).

II.    **ARGUMENT**

Because the Town's Retirement Board determined that each plaintiff qualified for the same work-related disability pensions as police and fire, as set forth in the CBAs and in Section III. B.(1) of the Pension Code, it is axiomatic that plaintiffs qualify for all Chapter 568 benefits afforded police and fire under §7-433c, including but not limited to those set forth in §31-308(b). On this basis, Summary Judgment in favor of the plaintiffs is warranted, as the Town has failed completely to provide such benefits to members which it has already determined to be qualified to receive them. (The Town Pension Code section III(B), Ex. 2; The Collective Bargaining Agreements, Ex. 11; Section 7-433(c) of the G.C.S., Ex. 8; Public law 71-524, Ex. 18)

A.    **The 1983 Claim: Deprivation of Due Process Under the Fourteenth Amendment**

The Fourteenth Amendment to the United State constitution provides that the "State [shall not] deprive any person of life, liberty, or property, without due process of law…" In order to prevail in a due process claim, a party must prove that: (1) he has been deprived of a property interest cognizable under the due process clause; and (2) the deprivation of the property interest has occurred without due process of law. Board of Regents State Colleges v. Roth, 408 US 564,572; 92 Supreme Court 2701 (1972); Double I Limited Partnership v. Planning and Zoning Commission, 218 Conn. 65, 76, 588 A.2d 624 (1991) ; Connecticut Education Assn. V. Tirozzi, 210 Conn. 286, 293, 554 A.2d 1065 (1989). Plaintiffs have established facts which clearly satisfy this two-pronged standard.

1.  **The heart and hypertension benefits provided for plaintiffs' in their respective pension plans amount to constitutionally protected property rights under 42 USC 1983.**

In defining property interests which are protected by procedural due process courts have held these interest "extend well beyond actual ownership of real estate, chattels, or money". <u>Board of Regents State Colleges v. Roth</u> 408 US 564,572; 92 Supreme Court 2701 (1972) But while "the court has eschewed rigid or formalistic limitations on the protection of procedural due process, it has at the same time observed certain boundaries. For the words 'liberty' and 'property' in the due process clause of the Fourteenth Amendment must be given some meaning" <u>Roth, supra 572.</u>

"The test is whether a person has already acquired an interest in specific benefits that demand protection under procedural due process…To have property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it…Property interests…are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law—rules or understanding that secure certain benefits and that support claims of entitlement to those benefits. <u>Roth, supra, 576.</u> A persons interest in a benefit constitutes a "legitimate claim of entitlement" if it supported by contractual or statutory language that might be invoked at a hearing. <u>Perry v. Sinderman,</u> 408 US 593, 601, 92 Supreme Court 2694, 2699, 33 L. Ed. 2d 570 (1972).

Under these terms courts have held that collective bargaining agreements can be sources of constitutionally protected property rights. "A collective bargaining agreement is, of course, a contract between employer and employees. As such, it is not surprising based on the broad language contained in Roth, that courts have uniformly held that a collective bargaining agreement can be the source of a property right entitled to due process protection." <u>Danese v. Knox,</u> 827 F. Supp. 185, 190 (S.D.N.Y. 1993) citing <u>Brock v. Roadway Express, Inc.,</u> 481 US 252, 260-261,107 S.

8

Ct. 1740,1747, 95 L. Ed. 239 (1987); Moffit v. Town of Brookfield, 950 F2d 880, 885 (2d Cir. 1991). Further, the Second Circut has recognized that the "entitlement to disability retirement is a constitutionally protected property interest for purposes of §1983" Russell v. Dunston, 896 F.2d 664, 668 (2d Cir. 1990). The Russell court further stated, " we have previously held that municipal employee retirement benefits are constitutionally protected property." Russell, supra at 668-9, Citing Winston v. City of New York, 759 F. 2d 242, 247-49 (2d Cir. 1985) (pension benefits) ; Basciano v. Herkimer, 605 F.2d 605, 609 (2d Cir. 1978). (Disability retirement benefits, cert. denied, 442 US 929, 99 S.Ct. 2858, 61 L.Ed. 2d 296(1979),  S&S Maintenance., Inc.v Goldin, 844 F2d 962 (1988).

The 13.3 and 10.2 benefits are each set forth in the collective bargaining agreements as amendments to the Town's pension code and are clearly protected property interests under the Due Process clause.(Exhibit 11)

> **2.  Failure to award certain heart and hypertension benefits provided by Chapter 568 amounts to a deprivation of property without Due Process of Law.**

 Due Process requires that, at minimum, a party who is denied a property interest be afforded a statement of reasons for the denial and an opportunity to rebut those reasons. Board of Regents of State Colleges v Roth, 408 US 564,585, 92 S Ct. 2701 (1972).  Through intentional misdirection, malfeasance and chicanery, by and through the defendants, the Town has failed to provide plaintiffs this fundamental right to Due Process.

Each of the plaintiffs filed for, and ultimately received, a disability in the line of duty pension based on their respective heart and hypertension ailments and pursuant to the Town's pension code as amended by the applicable collective bargaining agreement sections at issue.  More particularly, the Retirement Board granted each and every one of them a work-related disability pension in accordance with §III.B.(4) of Section 25-22,  of the Town Code (formerly §25-24, Section 4) which states:

> All new members of the pension plan, with the exception of police, firemen, Town
> Hall and any other members of a bargaining unit who presently are entitled to the
> heart and hypertension benefit, after the effective date contained in this subsection,
> will not be entitled to a job-related disability pension due to hypertension or heart
> disease.

(Pension Code, Ex.2;Plaintiffs applications, Ex.19-22; Ex.15; Correia depo 15,Ex. 4; Schirillo depo

11,Ex. 5; Brenton depo 28, Ex. 3.)  The Retirement Board's consideration and award of these heart

and hypertension benefits to the plaintiffs therefore mandates that the Town  also award them  the

additional Chapter 568 benefits as provided through §7-433c (P.A. 71-524).   The Retirement Board

and the Town's refusal to provide these Chapter 568 benefits, part and parcel to the heart and

hypertension disability pension benefit determination process, constitutes a patent deprivation of

Due Process.

        Defendants' allegation that the CBA grievance procedures are the only recourse plaintiffs

have to secure the Chapter 568 benefits is nothing but a legal fiction.  Eileen Murphy, in whom all

discretion is apparently vested on the subject, conceded that the grievance procedures have *never*

been used to determine the substance of a members' claim to entitlement of such benefits.(Murphy

depo 75-76 Ex.6).  This fiction is also evidenced by the declaration of the then Town Manager,

Mark Barnhart, on a memorandum issued as the basis for denying the grievance filed by the

plaintiff, August Correia:

> Management contends that the notice of claim is untimely.  <u>Management further
> argues that the aforementioned section of the collective bargaining agreement
> pertains to retirement benefits, the award of which are at the sole discretion of
> the Retirement Board.</u>  Management notes that the grievant is simultaneously
> pursuing a claim for duplicative benefits under workmen's compensation.

(Barnhart Memorandum, Ex.1)<u>(emphasis added)</u>

        Notwithstanding the fact that two of the original plaintiffs (Bond and Correia) filed

grievances in an effort to obtain the Chapter 568 Benefits and were denied, that denial is rooted in

the fact that the claims were not arbitrable in that forum, just as the Town Manager succinctly stated

above.  The only recourse, according to the Town Pension Code, is to file a civil action within the time prescribed by § 25-22, Section XII.E. (Ex. 2).  The defendants' argument that the plaintiffs only recourse against the Town for its refusal to award, let alone consider in a proper forum, their entitlement to Chapter 568 benefits not only denies them Due Process; it is a manifestation of the defendants' continued intentional efforts to deprive them of this constitutional right.

The existence of grievance procedures in a collective bargaining agreement does not automatically satisfy an employee's right to due process. Each collective bargaining agreement must withstand constitutional examination. Tedesco v City of Stamford, 222 Conn. 233, 610 A.2d 574 (1992) And a grievance procedure, although not inherently inadequate, may breach notions of due process in the manner in which it is administered. Parret v Indiana, 737 F2d 690,695 (1984).

Defendants claim that the Plaintiffs had redress to denial of their hypertension and heart disease benefits under the grievance procedures set out in section 17 of the CBA. However, these grievance procedures and the administrative remedies provided thereafter do not meet adequate standards of due process on their face or as administered.  Significantly, the 15-day period in which to file an appeal of the Town's denial of benefits is in contradiction to the terms of the CBA under section 13.3 and is wholly inadequate in light on the Town's reliance on pre-determination procedures enumerated under section 7-433 and Chapter 568 of the Connecticut State Statutes. At the very minimum the Plaintiffs should have had a one- year period (as prescribed under state law) in which to file an appeal/grievance of the Towns initial denial. (Ex. 9)  Furthermore, the plaintiff's claims for heart and hypertension benefits were already pending before the Retirement Board and pursuant to those procedures set forth in the pension ordinance.  Finally, the grievance procedures are not applicable to all classes of employees entitled to the heart and hypertension benefits provided by virtue of the fact that not all such persons are members of the collective bargaining unit and able to avail themselves of the grievance procedures. Ex.( 11)

In <u>Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893 (1976)</u> the Court created a three-prong test to determine whether grievance procedures meet procedural due process requirements: "First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Governments interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirement would entail." <u>Mathews, supra at 334.</u> In short, the standard test of procedural adequacy under the due process clause merely requires a comparison of the costs and benefits of giving an employee a more elaborate procedure than he actually received. <u>Parrett, supra at 693.</u> As already shown, the Town already has a disability review system in place that addresses the very medical and legal issues claimed by the plaintiffs and those similarly situated. The Town's unilateral insistence that the Chapter 568 claims be carved-out of the Retirement Board system and force the plaintiffs to follow a grievance procedure that is not likewise designed to evaluate such claims and, furthermore, fails to provide the same procedural due process afforded to police and fire under §7-433c (P.A. 71-524) is nothing less than a capricious effort to deny them these benefits.

Section 13.3 of the CBA reads: the Municipality <u>shall</u> provide all members of the bargaining unit with hypertension or heart disease benefits mandated for municipal fire and police personnel under P.A. 524 (§7-433) under the <u>same terms and conditions as set forth in said Public Act….</u> (Emphasis added)". Under the terms of the agreement the Town was obligated to provide the Plaintiffs the same benefits afforded to fireman and police under the Workers Compensation Act, it was also obligated to process claims for these benefits in the same manner it processed all employee Workers Compensation claims. In fact, the Town's policy is to process claims for §13.3 benefits on the same forms it uses to process all other Workers Compensation claims. As stated in Eileen Murphy's affidavit, claims for both benefits area filed on Form 30c and the Town's decision is

recorded on Form 43 as required under Chapter 568. Employees who are not seeking §13.3 benefits then have one year in which to file an appeal of the Towns determination. If an appeal is filed, the employee is entitled to an evidentiary hearing. Plaintiffs should have been afforded the same procedural rights as all other employees and granted a one-year period in which to file an appeal of the Towns denial. The Town never notified its employees that they should file a grievance within 15 days rather than file an appeal within one year, and failed to inform the Plaintiffs of this Town policy when asked by the Plaintiffs about proceeding with an appeal. It was not unreasonable for the Plaintiffs to believe they were entitled to a one-year appeal process since the Town followed procedures and used the forms mandated under the Workers Compensation law.

The Town's unwritten policy and procedure regarding claims for Chapter 568 benefits pursuant to §13.3 and §10.2 claims is nothing less than arbitrary and capricious "system" in which they insist that claimants file Workers' Compensation claims, which are categorically denied, then the Town moves for their dismissal from the Workers' Compensation Commission by which time they insist the claimant's only recourse is to file a grievance, that is then denied on the basis that it was not timely filed, all the while refusing to address the claim in the one forum designed to address such issues and in which inexorably-related heart and hypertension benefits are pending and determined, namely the Retirement Board and the disability review system.

The effect of the Towns policies was to preclude employees from obtaining §13.3 benefits unless they had personal knowledge of the 15-day grievance procedure rule. Since the Town hadn't granted these benefits for ten years prior to Plaintiffs requests it was not common knowledge among employees, without notice it was reasonable for the Plaintiffs to believe that they should continue following the procedures established under Workers Compensation claims. All notions of due process would require either explicit notice of the grievance rule at the time benefits were

denied or adherence to the one-year rule required under State law. The effort for Defendants would have been minimal since they were already following state procedure for all its other employees.

   3. **Plaintiffs Schirrillo and Brenton did not fail to exhaust their administrative remedies.**

"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust grievance procedures and arbitration procedures, such as those contained in the collective bargaining agreement.Vaca v. Sipes, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed 2d 842 (1967); Republic Steel Corporation v. Maddox, 379 U.S. 650,652, 85 S.Ct. 614, 13 L.Ed. 2d 580 (1965); Hartford Principals' & Supervisors' Assn. v. Shedd, 202 Conn. 492, 500, 522 A.2d 264 (1987). "Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction."Hartford v. Hartford Municipal Employees Association, 259 Conn. 251,283, 788 A.2d 60 (2002).  The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. "A contrary rule which would permit an individual employees to completely sidestep available grievance procedure in favor of a lawsuit has little to commend it.." School Administrators Assn. v Dow, 200 Conn 376,382, 511 A.2d 1012 (1986); see Rebublic Steel Corp. v. Maddox, supra, 379 U.S. 650; see alsoTedesco v. Stamford, 222 Conn. 233,250-252, 610 A.2d 574 (1992).

However, exceptions to this rule have been created by both the legislature and the judiciary.In Flynn v. Town of Newington, 2 Conn. App. 230,237-38, 477 A.2d 1028, cert. denied 194 Conn. 804, 482 A.2d 709 (1984), the Connecticut Appellate Court, following the precedent of federal appellate courts, held that retired employees are not required to exhaust the administrative grievance procedure and may directly seek redress through the courts. The Court stated: "Retirees are not employees for the purposes of the National Labor Relations Act, and the union which may have represented them while they were active members of the bargaining unit is under no statutory

duty to represent them in negotiations with their former employer. <u>Allied Chemical Workers v.</u>
<u>Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed. 2d 341 (1971).</u> A retired employee
has contractual rights under a collective bargaining agreement for which he may independently seek
redress regardless of whether the union chooses to represent him. Id., 181 n. 20. Although active
employees are deprived of the ability to deal with or directly sue their employer when their
bargaining agent has entered into a collective bargaining agreement with the employer, retired
employees have no duty to exhaust arbitration procedure required by the agreement  before bringing
a direct action against the employer .<u>Anderson v. Alpha Portland Industries, 727 F. 2d 177,184-85</u>
<u>(8th Cir. 1984).</u>" Thus, none of the plaintiffs were required to file a grievance before initiating the
present action since they  were not  Employees at the time his disability pension benefit was
awarded by the Retirement Board without consideration or granting of the Chapter 568 benefits
concurrently sought.(Ex. 12 ; Ex. 15; Correia depo 15, Ex. 4; Schirillo depo 11, Ex. 5; Brenton depo
28,Ex. 3)

A party is also excused from the exhaustion doctrine "if the administrative remedy is inadequate or
futile". <u>Cahill v. Board of Education, 187 Conn. 94,444A.2d 907 (1982)</u> "The law does not require
the doing of a useless thing." <u>Corsino v Glover, 148 Conn. 299,308, 170 A.2d 267 (1961);</u> <u>Lacroix v.</u>
<u>Bd. Of Education of Bridgeport, 199 Conn. 70 ( 1986).</u> The defendants argument that Plaintiffs
Schirrillo and Brenton are barred from pursuing this action because they failed to exhaust their
administrative remedies available under the CBA therefore also fails for the reasons stated
previously:  Namely, this argument is diametrically opposed to the statement of the Town Manager
when he memorialized the basis for denying the grievance filed by the Plaintiff August Correia was
in large part because the "retirement benefits" sought are awarded "at the sole discretion of the
Retirement Board." (Barnhart Memorandum, Ex.1).   Simply and succinctly, the Town cannot have
it both ways.  The defendants' claim that these plaintiffs failed to exhaust their administrative

remedies when they had knowledge of the futility of pursuing the benefits in the grievance procedure forum, is nothing short of capricious.

In addition, the State Supreme Court has determined that CGS§31-51bb authorizes an Employee who has failed to exhaust grievance procedures under a collective bargaining agreement, or received an adverse determination in such a proceeding, to pursue a cause of action in Superior Court if the cause of action arises under a state statute or under a state or federal claim of violation of due process. Hunt v. Prior, 236 Conn. 421 (1996); Genovese v. Gallo Wine, 226 Conn. 475 (1993). General Statutes §31-51bb states in relevant part that "[n]o employee shall be denied the right to pursue , in a court of competent jurisdiction, a cause of action arising under the state or federal Constitution or under state statute solely because the employee is covered by a collective bargaining agreement. Since Defendants actions violated both the state and federal constitution Plaintiffs are not barred from pursuing this action.

And finally, the Federal Supreme Court has held that exhaustion of state administrative remedies is not a prerequisite to an action under §1983. Patsy v. Bd. of Regents of Florida, 102 S.Ct. 2557,2558 (U.S. 1982). In citing the Patsy decision Judge Van Graafeiland held in Costello v. Town of Fairfield, 811 F.2d 782 (2d Cir. 1987) :" I do not believe that appellants must exhaust the grievance procedure provided in their collective bargaining agreement before seeking judicial review of the constitutionality of that procedure under 42 U.S.C. §1983. In keeping with the general rule that section 1983 does not require exhaustion of state administrative remedies,….a municipal employee is not required to pursue collectively-bargained-for grievance procedures before filing suit under section 1983 to challenge the constitutional sufficiency of those grievance procedures." Costello, supra at 785.

4. **The defendants Feeney, Barnhart, Borer and Obernesser knew or should have known that the plaintiffs were unlawfully deprived of heart and hypertension benefits under §13.3 of the Collective Bargaining Act.**

Defendant Eileen Murphy has been the Insurance Coordinator for the Town for the past seventeen years. As part of her duties she administers Town employee claims for s13.3 hypertension and heart disease benefits, as well as employee benefits under s7-433c and all other claims made pursuant to the Workers Compensation Act. She is also liaison between the Town and the Pension Review Board and the Disability Review Board.

As liaison she submits all employee documents and records to the Pension Board and prepares a summary and recommendation regarding the employee benefits to the Board.

As Administrator of the Towns Worker Compensation program Ms. Murphy personally processes claims for s13.3 benefits, s7-433c benefits and all other Workers Compensation-related claims. Under the Act employees have one year from the date of injury to file a claim for compensation with the Town. The Town employees file claims for benefits on Form 30c. According to her own testimony, Ms. Murphy has personally granted or denied every claim ever filed with the Town. Also, according to her testimony, it is Town policy to automatically deny every claim filed with twenty-eight days.

Defendant Murphy is supervised and has her work reviewed by the Director of Human Resources. The Director also maintains all files regarding grievances filed under s17 of the CBA. Defendant Obernesser was and Defendant Borer currently is the Director of Human Resources for the Town. As directors they supervised, reviewed and approved the denials of benefits issued to the Plaintiffs. Therefore they had direct knowledge of the Plaintiff's claim and denial of benefits. They also had direct knowledge of the grievance filed by Mr. Correia and one would assume they set the policy regarding its denial on grounds of timeliness and subsequent litigation revolving around that decision. In addition, Mr. Brenton made a personal

appeal specifically to Mr. Obernesser when he was trying to figure out the proper procedure for filing his claim.

The Town Manager receives copies of all pension packets prepared by Defendant Murphy and must sign off on any claim approved under the Act. Defendants Feeney and Barnhart were Town Managers at the times the Plaintiffs filed their requests for benefits.

Since these Defendants were responsible for setting Town policy and supervising Town employees they should have known or were responsible for the Towns automatic benefits denial policy and the Town stance taken regarding the 15 day time limit for filing grievances. They were also personally approached by the Plaintiffs when they were attempting to figure out how to file and appeal their claims. Town policy and the actual administration of §13.3 benefits was contrary to due process since it denied the Plaintiffs any access for a hearing or review of their claims for benefits. This was contrary to procedures followed under §7-433 of the Connecticut statutes and in breach of the CBA.. Defendants ser Town policy and approved its enforcement and therefore were personally responsible for the Plaintiffs deprivation of rights.

In Williams v Smith,781 F2d 319,323 (1986) the court stated that "a defendant may be personally involved in a constitutional deprivation with the meaning of 42 U.S.C. s1983 in several ways. The defendant may have directly participated in the infraction, citing Johnson v Glick, 481 F. 2d 1028, 1033-34(2d Cir.),cert. denied , 414 U.S. 1022, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)(prison guard liable for beating inmate)…A supervisory official, after learning of the violation through a report of appeal, may have failed to remedy the wrong, citing United States ex rel. Larkins v. Oswald, 510 F.2d 583,589 (2d cir. 1975). A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, citing McMann vCouglin,698 F.2d 112,125 (2d Cir. 1983).Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing

18

subordinated who caused the unlawful condition or event, citing <u>Wright v. McMann,</u>460 F.2d 126,

135 (2d Cir. 1972).

Since the defendants had personal involvement in a constitutional deprivation they must be

held liable for their actions.  <u>Ostlund v. Bobb</u>, 825 F.2d 1371, 1374 (9th Cir. 1987), <u>Moffitt v. Town</u>

<u>of Brookfield,</u>950 F2d 880,886 (2d Cir. 1991)

### 5.  **The Defendants are not entitled to qualified immunity.**

The defendants are not entitled to qualified immunity, in reviewing the issue the court must

address two different legal standards: one under common law for tort liability of municipal

employees and another under §1983.  Under both the state and federal standards a distinction is

made between municipal employee acts which are ministerial and those considered discretionary

governmental acts.  <u>Mulligan v. Rioux,</u> 299 Conn 716, 731, 643 A.2d 1226 (1994).  Under both

standards, if a municipal employee fails to perform a ministerial act he/she may be held personally

liable.  A ministerial act is one which refers to a "duty which is to be performed in a prescribed

manner without the exercise of judgment or discretion" <u>Roix</u>, supra, at 727.

It is well established that the Retirement Board has considered and acted upon the plaintiffs'

claims for heart and hypertension benefits pursuant to the Pension Code and as amended by the

collective bargaining agreements.(Pension Code, Ex.2; Ex.19-22; Correia depo p 15, Ex.4; Schirillo

depo 11, Ex. 11; Brenton depo p 28, Ex.3)  Once the compensability of these work-related disability

benefits were established, it was axiomatic that they were also entitled to the Chapter 568 benefits.

The awarding of these additional benefits is mandatory under the Workers' Compensation Act, as

proscribed by section 7-433©.   Accordingly, the defendants failed, individually and collectively, in

their duty to perform the strictly ministerial act of granting Chapter 568 benefits to each and every

plaintiff who was awarded a work-related disability pension.

In general a municipal employee is generally immune from liability of a governmental act. This is "an act performed wholly for the direct benefit of the public and are supervisory or discretionary in nature". Wright v. Brown, 167 Conn. 464, 471, 356 A.2d 176 (1975). Under common law the performance of discretionary governmental acts is qualified by three recognized exceptions: "first where the circumstances make it apparent to the public officer that his/her failure to act would be likely to subject an identifiable person to imminent harm…second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws…and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Riony, supra at, 728. Citing Evon v. Andrews, 211 Conn. 501, 505, 559 A.2d 1131 (1989).

"A defendant is said to have acted with 'malice' if he [or she] acted primarily for an improper purpuse; that is for a purpose other than that of securing the proper adjudication of the claim on which [the proceeding ] are based; Rioux, supra 732, citing restatement of torts § 676.

Plaintiffs have alleged sufficient facts to pursue claims against the individual defendants based on their intent to deprive plaintiffs of their benefits under §13.3. For this additional reason, the individual defendants are not entitled to qualified immunity.

Where a civil suit is brought pursuant to §1983 and arising from the performance of a municipal employees discretionary function, qualified immunity is available "in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" Harlow v. Fitzgerald, 457, US 800,818, 102 SCT 2727 (19  ) "A subjective inquiry into an officials personal belief is rejected in favor of an objective analysis of what a reasonable officer in [the] defendants position would believe". Rioux, supra at 729.

As argued above the plaintiffs were deprived of their right to an adequate notice and hearing prior to having §13.3 benefits denied by the town. The towns policy of beginning the administration

of §13.3 benefits pursuant to state statute regulation Worker's Compensation law and then switching over to §17 grievance procedure of the CBA amounted to taking of the plaintiffs property (the §13.3) without due process.  Not only do the facts suggest a reasonable person would know they were depriving the plaintiffs of an entitlement, they prove it was done pursuant to town policy and was therefore, intentional! And, this policy was enforced without notifying The plaintiffs that the town would refer to §17 after the initial denial of benefits!

There are factual disputes that are material to resolving whether it was reasonable for the defendants to enforce the grievance procedures of §17 of the CBA in administering the plaintiffs claims under §13.3 of the agreement, therefore summary judgment should not be granted.

### B.  DUE PROCESS UNDER THE CONNECTICUT CONSTITUTION

Defendants correctly cite the Mathews balancing test and  federal law as precedent for Due Process claims under the Connecticut Constitution. As presented above, under federal law and the Mathews test the Defendants policies and procedures pursuant section 13.3 of the collective bargaining agreement failed to provide Plaintiffs with Due Process required under the law.

### C.  THE STATE LAW CLAIM FOR BREACH OF CONTRACT

The Plaintiffs are seeking hypertension and heart disease  benefits pursuant to§13.3 of the CBA. The language of the section is clear and unambiguous. It states: Effective April 1, 1974, the Municipality shall provide all members of the bargaining unit with the hypertension or heart disease benefits mandated for municipal fire and police personnel under P.A. 524 *under the same terms and conditions as set forth in said Public Act.*.  This provision provides for both the "who" and the "how" of these benefits. Defendants argue that after applying for these benefits on the same forms and in the same procedure followed by all other employees seeking Workers Compensation benefits under §7-433 of the State statute , Plaintiffs should have contested the Town's denial of benefits through the grievance procedures set out in § 17 of the CBA. However, since the terms of §13.3 are plain and

unambiguous the Plaintiffs should have been able to file an appeal of the decision within one year of the Town's decision, and the Town is in breach of the CBA by failing to follow these procedures set out under §7-433. "As a general matter, parties are presumed to have contracted with knowledge of the existing law, and contract language must be interpreted in reference thereto.<u>Harcho Corp. v. Della Pietra,</u> 195 Conn. 18 (1985). "Unless the agreement indicates otherwise, a statute existing at the time an agreement is executed becomes part of it and must be read into it just as if an express provision to that effect were inserted therein." <u>LMK Enterprises, Inc. v. Sun Oil Co.,</u> 86 Conn. App. 302 (2004).

In <u>Hatcho Corp. v. Della Pietra,</u> 195 Conn 18 (1985), the Court held that the insertion in a lease of a statutory reference creates a presumption that the statute is to be incorporated in the lease. "Parties generally do not insert meaningless provisions in their agreement and therefore every provision must be given effect if reasonably possible. <u>Hatch,supra at 20.</u> Defendants administer all §7-433 claims pursuant to code so they could reasonably and easily administer §13.3 benefits in the same manner. Failure to do so is contrary to the terms of the CBA and resulted in a breach of Plaintiff's rights under the CBA.

### D.  BREACH OF IMPIED COVENANT OF GOOD FAITH AND FAIR DEALING

The implied covenant of good faith and fair dealing has been applied by Connecticut Courts in an variety of contractual relationships, including leases; <u>Central New Haven Development Corporation v. La Crepe, Inc.</u>, 177 Conn. 212, 413 A. 2d 840 (1979); insurance contracts; <u>Hoyt v. Factory Mutual Liberty Ins. Co.,</u> 120 Conn. 156, 159, 179 A.. 2d 842 (1935); and <u>Grenier v. Compratt Construction Co.,</u> 189 Conn. 144,148, 454 A.2d 1289 (1983). The Restatement (Second) of Contracts similarly recognizes an implied covenant of good faith and fair dealing in every contract without limitation. See Restatement(Second),Contracts §205 (1979); see also General Statutes § 42a-1-203. "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed

common purpose and consistency with the justified expectations of the other party….'' Restatement (Second), Contracts § 205, comment a (1979); see also <u>Clover Mfg. Co. v. Austin CO.,</u> 101 Conn. 208, 214, 125 A. 646 (1924).  Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expresses terms of a contract, unless, possibly, those terms are contrary to public policy. <u>Southbridge Assoc., LLC v. Garofalo,</u> 53 Conn. App. 11, 728 A2d. 1114 (1999) *citing* <u>VTR, Inc. v. Goodyear Tire & Rubber Co.,</u> 303 F. Supp. 773 (S.D.N.Y.1969); 3 Corbin, Contracts §564, (1960); 11 Williston, Contracts (3rd. Ed. Jaeger) §1295

The essence of the applicability of the good faith and fair dealing principal is the "fulfillment of the *reasonable expectation of the parties.*" (emphasis added) <u>Magnan v. Anaconda Industries, Inc. 193 Conn 558 (1984).</u>  Plaintiffs have clearly set forth facts in dispute which give rise to a claim of breach of the implied covenant of good faith and fair dealing against the defendants.

## III.   <u>CONCLUSION</u>

For the reasons set forth, the plaintiffs respectfully request the Court deny the motion for summary judgment and allow them to proceed with their claims.

<div style="margin-left:40%">

FOR THE PLAINTIFFS
RICHARD SCHIRILLO, AUGUSTO
CORREIA, RANDOLPH BOND and
RONALD BRENTON

By: _____
James T. Baldwin, ct08535
Coles, Baldwin & Craft, LLC
1261 Post Road, P.O. Box 577
Fairfield, CT 06824
Tel. (203) 319-0800
Fax (203) 319-1210

</div>

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been sent via regular mail, postage pre-paid, on this date to:

Richard Buturla, Esq.
Berchem, Moses & Devlin
75 Broad Street
Milford, CT 06460

_____
James T. Baldwin