# EXHIBIT 3

```
                                                              16
                    BRENTON - DIRECT - HOLCOMB
 1
 2      Q    Do you recall in 1999, I think it was
 3  approximately December of 1999, having an examination
 4  by a Dr. Wallace Lebowitz?
 5      A    Yes.
 6      Q    And am I correct that that was approximately
 7  December of 1999?
 8      A    Yes, it was.
 9      Q    Was that an examination that was set up by the
10  Town of Stratford?
11      A    Yes, it was.
12      Q    And did you go to Dr. Lebowitz's office and he
13  examined you there?
14      A    Yes, I did.
15           MR. HOLCOMB:  I would like to have this
16           marked, please.
17           (Letter dated 12/17/99 was marked
18           Defendant's Exhibit D for Identification.)
19      Q    Mr. Brenton, I'm handing you what's been
20  marked as Defendant's Exhibit D for Identification.
21  Is that document a letter dated December 17, 1999, to
22  Ms. Eileen Murphy, Insurance Coordinator for the Town
23  of Stratford from Dr. Lebowitz?
24      A    Pardon?
25      Q    Is that document, Exhibit D, a copy of a
```

```
                    BRENTON - CROSS - BALDWIN
```

  1  BRENTON - CROSS - BALDWIN
  2  a treasurer.
  3      Q    So on the basis of your earlier testimony,
  4  you had spoken to Eileen Murphy about those benefits;
  5  is that right?
  6      A    No.  We never had any conversation as far as
  7  me filing this claim against the town, no.
  8      Q    Let's go back now to your understanding as to
  9  what you're supposed to do in order to seek those
 10  Section 10.2 benefits.  Okay?
 11      A    Okay.
 12      Q    What was your understanding as to how you are
 13  supposed to obtain those benefits?
 14      A    You file the claim with the Town of Stratford
 15  and then at some point in time it would be acted upon
 16  by the Pension Board.
 17      Q    And what led you to believe, if anything, that
 18  that was the method by which you were supposed to
 19  obtain those benefits?
 20      A    Well, I have always had a pretty good
 21  relationship with the Human Resources Department.
 22  When Jack Obernesser took his job he stated that he was
 23  there for the employees.
 24           I would have thought if I was doing something
 25  wrong, seeing that Eileen was an executive member of

```
                                                           21
                    BRENTON - CROSS - BALDWIN
 1
 2    the Supervisor's Association, that I would have been
 3    informed that I was not following the proper procedure.
 4        Q    So Eileen Murphy was an executive member of
 5    your union?
 6        A    That's correct.
 7        Q    And, if you know, are they charged with
 8    protecting the right of union members?
 9        A    Yes.
10        Q    So she's in a position where she's supposed
11    to help you obtain benefits that are provided to
12    members of the Collective Bar Agreement?
13             MR. HOLCOMB:  Objection.  Leading.
14        A    Yes.
15        Q    And indeed wasn't it your understanding that
16    she was going to do just that with respect to Section
17    10.2 benefits, the heart and hypertension benefits?
18             MR. HOLCOMB:  Objection.  Leading.
19        A    I would have thought if I was not following
20    the procedures she would have told me what I should be
21    doing.
22        Q    I want to be clear on I would have thought.
23    I want you to be clear.  Is that what you thought at
24    the time?
25        A    Yes.  I always had a good relationship with
```

```
                                                           22
 1                 BRENTON - CROSS - BALDWIN
 2   those people.  So I thought.  That's it.
 3        Q    Did Eileen Murphy ever say to you that you
 4   were not going to get those benefits?
 5        A    No.
 6        Q    Did she ever say to you that you were going
 7   about the way to get those benefits incorrectly?
 8        A    No.
 9        Q    And so the record is clear again, it was your
10   understanding that those benefits under Section 10.2,
11   the heart and hypertension, would be either approved or
12   denied by who?  By what body of the town?
13        A    The Pension Board.  That was a duty of the
14   Pension Board.
15             You know, I really didn't even know that the
16   town had denied it.  I had expected it be denied.
17   I had never gone for an examination by a town
18   physician.  And I don't mean that to be denied.
19             I didn't expect them to take any action until
20   I had gone for the physical examination by a town
21   doctor, is what I should say.
22        Q    Were you ultimately awarded a work-related
23   disability by the Pension Board?
24        A    Yes.
25        Q    Did you ever receive those heart and
```

BRENTON - CROSS - BALDWIN

1  hypertension benefits provided for Section 10.2 of the
2  Collective Bar Agreement?
3      A    No.
4      Q    What was your understanding as to what the
5  benefits were that you were entitled under Section
6  10.2?
7      A    The main thing for me was going to be on the
8  medical coverage, as far as prescriptions and doctor
9  visits. Every year since I had the problem, since I
10 started in '99 or '98, I guess is when it really
11 started, I exceed on prescription coverage of my
12 medical benefits. Through the regular insurance, not
13 workman's comp.
14          And the interesting thing is that when I
15 retired superannuation, I was retired at 59,000
16 something. My disability would be 59,000 something.
17 It was within a couple hundred dollars of each other.
18 The thing that I was trying to secure was the medical
19 coverage.
20     Q    Mr. Brenton, you were also asked whether to
21 your knowledge what's been marked as Exhibit B, was the
22 only form or report that was submitted pursuant to the
23 Section 10.2 benefits.
24          I would like to show you a document and I'm

```
                                                          24
1                BRENTON - CROSS - BALDWIN
2    going to show you another document, too, and tell me
3    if you can identify that?
4         A    Yes.  I guess this was in response to CIRMA.
5         Q    Who's CIRMA?
6         A    They were the town's insuring agency, I
7    believe.  Risk Management.
8         Q    For Workers' Compensation?
9         A    Yes.
10        Q    Is that your signature on the bottom?
11        A    Yes, it is.
12             MR. BALDWIN:  Why don't we mark these as
13        Plaintiff's Exhibits 1 and 2.
14             (Form 43 document was marked Plaintiff's
15        Exhibit 1 for Identification.)
16             (First Report of Injury was marked
17        Plaintiff's Exhibit 2 for Identification.)
18        Q    Mr. Brenton, looking again at what's been
19   marked Plaintiff's Exhibit 1, and you identified that
20   as a form filled out by you and the Workers'
21   Compensation insurance carrier?
22        A    Yes.  I believe they were the ones that
23   supplied me with this.  Because I would never have a
24   copy of this.
25        Q    This information contained on here,
```

1                BRENTON - CROSS - BALDWIN
2  particularly in what's identified as, I guess, question
3  28, is that information provided by you?
4       A    Yes.
5       Q    And it says, "I was working on the computer
6  when I experienced chest discomfort and irregular
7  heartbeat. I called my cardiologist, made an
8  appointment and went to see him."
9       A    Yes.
10      Q    Is that your signature on the bottom?
11      A    Yes, it is.
12      Q    It was your understanding that this was a part
13 of the process of filing a claim for benefits under
14 Section 10.2 of the agreement?
15      A    Yes.
16      Q    I'm going to ask you if you could identify or
17 if you're familiar with what's been marked as
18 Plaintiff's 2?
19      A    I believe I had seen this, but I can't really
20 say for sure whether I have or not. It does look
21 somewhat familiar.
22      Q    And you mentioned the town contested your
23 claim for the heart and hypertension?
24           MR. HOLCOMB: Objection. I don't think
25      he said contested. I think he said denied the

```
                    BRENTON - CROSS - BALDWIN
 1
 2      claim.
 3              MR. BALDWIN:  Denied the claim.  I'll
 4      rephrase it.
 5      Q    That the town denied your claim of heart and
 6   hypertension initially?
 7      A    Yes, that's correct.  At that point it was
 8   still a tabled motion by the Pension Board.  So as far
 9   as I was concerned it was still -- Something was
10   active even though it was not being acted on.
11      Q    Do you recall how much time passed before the
12   Pension Board did act on it?
13      A    Approximately a year and a half.
14      Q    So in that year and a half time did you have
15   any reason to file a grievance?
16      A    Well, you can't file a grievance if you're not
17   a member of the bargaining unit and I was no longer a
18   member of the bargaining unit.
19      Q    When were you no longer a member of the
20   bargaining unit?
21      A    When I retired under superannuation.  That was
22   in January of 2001.
23              MR. BALDWIN:  I have no further
24      questions.
25   REDIRECT EXAMINAITON BY MR. HOLCOMB:
```

BRENTON - REDIRECT - HOLCOMB

Q    With respect to Plaintiff's Exhibit 2, Mr. Brenton, is this the denial by the Town of Stratford that you referred to earlier in your testimony?

A    Yes.

Q    And your recollection was that that was sometime in the summer of 1999 when you received a copy of this?

A    Yes.

Q    Approximately.

A    Yes.

Q    Were you a member of the Supervisor's Union at that time, sir?

A    Yes, I was.

Q    So there was nothing that prevented you from filing a grievance under the Collective Bargaining Agreement in your request for Section 10.2 benefits, which was denied, correct?

A    That's correct. Other than I was out on sick leave, but --

Q    Now you said that the disability benefits -- I'm sorry. The disability pension was acted upon about a year and a half; would that be a year and a half after you filed your claim for Section 10.2 benefits?

```
                                                              28
 1              BRENTON - REDIRECT - HOLCOMB
 2      A    That's correct.  No, not after I applied for a
 3   10.2.
 4      Q    Your reference point was a year and a half
 5   later?
 6      A    After I retired under superannuation.
 7      Q    It was after you retired that you were granted
 8   the disability pension?
 9      A    That's correct.
10      Q    Did you ever consult with anyone at your union
11   as to whether you could file a grievance at any time
12   after you retired under the superannuation pension with
13   respect to SEction 10.2 benefits?
14      A    Since I retired did I speak to anybody about
15   filing a grievance?
16      Q    Yes, for Section 10.2 benefits.
17      A    No.
18      Q    And is it your understanding, sir, because you
19   were retired that you could not file a grievance?
20      A    That's correct.
21      Q    Was that something that somebody from your
22   union told you?
23      A    That was something that I knew.
24      Q    How did you know that?
25      A    Reading online.
```

```
                                                              29
1                    BRENTON - REDIRECT - HOLCOMB
2       Q    Did you ever talk to anyone at your union
3  about that?
4       A    No.
5       Q    When the Town of Stratford denied your claim
6  for Section 10.2 benefits in the summer of 1999, did
7  you ever file a grievance regarding that denial?
8       A    No.
9            MR. HOLCOMB:  No further questions.
10           Thank you.
11 RECROSS EXAMINATION BY MR. BALDWIN:
12      Q    Ron, let's zero in on that question that was
13 just asked to you.
14           When the Form 43, marked as Plaintiff's
15 Exhibit 2, was received by you in the summer of 1999,
16 what was the status of your application for a
17 work-related disability pension?
18      A    It was still pending.
19      Q    And, again, it was your understanding that
20 that board would decide whether or not you were
21 entitled to benefits that were being denied in this
22 Form 43, which has been marked as Plaintiff's Exhibit
23 2?
24      A    Say that again.
25      Q    It's your testimony that you believe that the
```

                                                          30
1                BRENTON - RECROSS - BALDWIN
2     Pension Board would decide whether you were entitled to
3     the heart and hypertension benefits?
4          A    That's correct.
5          Q    So at the time the Form 43 was issued, as you
6     had said earlier, it wasn't a surprise because you had
7     not been examined by a doctor and those things --
8               MR. HOLCOMB:  Objection.  Leading.
9          Q    Is that correct?
10         A    That's correct.
11         Q    So at the time were you a member of the union
12    when this Form 43 was received in June of 1999?
13         A    Yes.
14         Q    But at that time it was your understanding
15    that the final decision actually had not been made?
16              MR. HOLCOMB:  Objection.  Leading.
17         A    That's true.
18         Q    So at the time you didn't really have a reason
19    to file a grievance, did you?
20         A    No, I had no reason to file a grievance.
21              The irony of this whole thing after they gave
22    me the disability it costed me $43,000 because they
23    didn't go upon the date I filed this thing here.  They
24    filed on the date I did retire and they gave me my
25    disability under a different contract.

```
                                                          31
 1              BRENTON - RECROSS - BALDWIN
 2      Q    Did you file a grievance relative to that
 3 situation?
 4      A    I have no recourse when you're not a town
 5 employee.  I had to seek legal counsel on that.
 6      Q    Do you currently have legal counsel
 7 representing you in that matter?
 8      A    Yes, I do.
 9      Q    Again, you never filed a grievance because
10 you're not a union member?
11      A    That's correct.
12           MR. BALDWIN:  Nothing further.
13 REDIRECT EXAMINATION BY MR. HOLCOMB:
14      Q    Mr. Brenton, it's your understanding that the
15 Pension Board could act upon your request for Section
16 10.2 benefits.  How did you come to that understanding?
17      A    My understanding was that they were the
18 determining body as far as pensions in the Town of
19 Stratford.
20      Q    What was that understanding based on?
21      A    Past results of the Pension Board, for lack of
22 a better of word.
23      Q    So it was your understanding in the past the
24 Stratford Pension Board had granted Section 10.2
25 benefits to employees?
```

BRENTON - REDIRECT - HOLCOMB

2  A  Yes.

3  Q  Could you name any employees that you believe the Stratford Pension Board granted Section 10.2 benefits to?

6  A  The only one I can say was Brian Allen and that was after a dispute. Off the top of my head.

8  Q  What makes you believe that the Pension Board granted Section 10.2 benefits to Mr. Allen?

10  A  He had applied and he had been tabled and everybody taken off the table acted upon it and granted disability.

13  Q  Did you talk to Mr. Allen about it?

14  A  Never.

15  Q  Who did you talk to about that?

16  A  Nobody.

17  Q  Did you ever seek the counsel of anybody at your union about whether the Pension Board had the power and/or authority to grant Section 10.2 benefits?

20  A  No. It was always my understanding that that's what the Pension Board did.

22  Q  And that was based upon your understanding that that's what the Pension Board had done for Brian Allen?

25  A  Yes. In the past anybody that retired under

                                                              33
                       BRENTON - REDIRECT - HOLCOMB
1
2   disability it was the Pension Board that made those
3   decisions. It was no individual in the town
4   government, for lack of a better word.
5       Q   Have you ever read the pension plan documents
6   for the Town of Stratford?
7       A   I believe I have.
8       Q   Was there something in the reading of the
9   pension plan documents that leads you to believe the
10  Pension Board has the authority to grant Section 10.2
11  benefits?
12      A   Without having the document in front of me to
13  review -- I believe it stated something that the
14  Pension Board was the governing body on it.
15      Q   With respect to Section 10.2 benefits?
16      A   Yes. I know 10.2 was mentioned in the
17  document.
18      Q   Other than Mr. Allen, are there any other
19  former Town of Stratford employees who you believe the
20  Pension Board has awarded Section 10.2 benefits?
21      A   Other than him are there any other ones?
22      Q   Yes.
23      A   Yes.
24      Q   Can you think of them by name?
25      A   No, I can't.

34

BRENTON - REDIRECT - HOLCOMB

2   Q    With respect to Mr. Allen and those employees,
3 what information did you have that leads you to believe
4 that the Pension Board was the entity that granted
5 Section 10.2 benefits to them?
6   A    Just by the past actions of the Pension Board.
7   Q    So you actually witnessed the Pension Board
8 doing that?
9   A    No. We received the minutes of the Pension
10 Board on a monthly basis after they meet.
11   Q    Now when you say we received the minutes of
12 the Pension Board, who's we?
13   A    All the town departments are mailed a copy of
14 that.
15   Q    And so you read minutes from past Pension
16 Board meetings?
17   A    (Witness nods head.)
18   Q    Is that a yes?
19   A    Yes.
20   Q    And is that how you gained your understanding
21 that the Town of Stratford Pension Board granted
22 Section 10.2 benefits?
23   A    That's correct.
24         MR. HOLCOMB: Nothing further.
25         (Whereupon the deposition was concluded.)