EXHIBIT 17



# TOWN OF STRATFORD
## Interdepartmental Memorandum

Date: January 30, 1998
Subject: Pension Applications
From: Eileen Murphy, Insurance Coordinator  *B. Murphy*
To: Pension Board Members

Attached are three new pension applications from the following employees:



1. Bruce Cardinelli, Public Works, Superannuation. Mr. Cardinelli was employed by the Town on 8/1/71 and has reached 26 years of service as of his requested effective date of 3/9/98.

2. Randolph Bond, Public Works, Disability in the Line of Duty.

3. Augusto Correia, Public Works, Disability in the Line of Duty.

Mr. Bond has been employed by the Town since 7/1/73 (24 years 7 months of service). Reference Section 13.3 of the Collective Bargaining Agreement between the Town and Public Works Local #134 which extended the "hypertension or heart disease benefits mandated for Municipal Fire and Police personnel under P.A. 524" to all members of the unit hired before 11/1/78. Also reference Section 7-433c of the C.G.S. which states in part;

> "...in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffered either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under Chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment."

Last February Mr. Bond filed a claim with the Workers Compensation Commission for benefits under 7-433c. We have received some medical records during the investigation of this claim including an independent medical evaluation done by Dr. Zuli Steremberg on 4/24/97. This claim has not been accepted as compensable and we do not have any recent medical reports on file. Note, Mr. Bond is currently working.

Mr. Correia has been employed by the Town since 12/18/72 (25 years of service). He also filed a claim for benefits under Section 7-433c in July of last year. We do not have any medical documentation on file. This claim was also not accepted as compensable. Mr. Correia was working until he went out with an alleged back injury on 1/21/98.

Note, neither of these disability requests has been reviewed by the Disability Review Board.

encs.



# TOWN OF STRATFORD
## Interdepartmental Memorandum

Date: March 27, 1998

Subject: Pension Applications

From: Eileen Murphy, Insurance Coordinator  *E. Murphy*

To: Pension Board Members

Attached are three new pension applications from the following employees:

1. William Devalt, Fire Department, Superannuation. Mr. Devalt was employed by the Town on 7/1/68 and has reached 30 years of service as of his requested effective date of 4/3/98.

2. Robert Koger, Fire Department, Superannuation. Mr. Koger was employed by the Town on 11/15/71 and has reached 26 years as of his requested effective date of 4/16/98.

3. Randolph Bond, Public Works, Superannuation. Mr. Bond was employed by the Town on 7/1/73 and has reached 25 years of service as of his requested effective date of 4/3/98. Mr. Bond currently has an application on the table for a Disability in the Line of Duty retirement. He has indicated via his attorney that he is withdrawing that request without prejudice at this time.

encs.

TOWN OF STRATFORD
MEMORANDUM

CONFIDENTIAL

DATE: May 29, 1998

SUBJECT: Pension Applications

FROM: Eileen Murphy, Insurance Coordinator  *E. Murphy*

TO: Pension Board Members

Attached are six new applications for retirement from the following employees:

1. Beverly Anzini, Board of Education, Superannuation. Ms. Anzini has 28 years of service as of her requested effective date of 6/5/98.
2. Randolph Bond, Water Pollution Control, Disability in line of duty.
3. Augusto Correia, Water Pollution Control. Original application for disability in line of duty is pending and he has now filed a request for superannuation with an effective date of 5/8/98. He reached 25 years of service as of that date.
4. Bruce Thompson, Water Pollution Control, Disability in line of duty.
5. Vincent Reilly, Public Works Police Garage, Disability in line of duty.
6. Frederick Silvestro, Parks Division, Disability in line of duty.

Randolph Bond was granted a regular pension (years of service) effective 4/3/98 without prejudice against his request for a disability retirement which was tabled. His request for disability retirement is made in accordance with Article 13, Section 13.3 of the Public Works Collective Bargaining Agreement which states "Effective April 1, 1974, the Municipality shall provide all members of the Bargaining Unit with the hypertension or heart disease benefits mandated for Municipal Fire and Police personnel under P.A. 524 under the same terms and conditions as set forth in said Public Act provided, however that any new employee hired on or after November 1, 1978 shall not be eligible for hypertension or heart disease benefits." Also reference Section 25-24 B(1) of the Town Code which states in part, "In the case of firemen and policemen, disablement due to hypertension or heart disease shall be conclusively presumed to be a disability incurred in the line of duty." Mr. Bond suffered a stroke in 1991 and was treated by his CHCP physician and return to full duty work after an absence of approximately 4 months. Records also indicate that he had a previous heart attack in 1993 or 1994. He is currently under the care of Dr. Stephen Urciuoli. Reference his letter of 3/28/97, "As Mr. Randolph Bond's physician, I can attest to the fact that he has suffered permanent damage to his heart as a result of hypertension, Diabetes and Coronary Artery disease. His electrocardiogram indicates a previous heart attack. This was also confirmed by an echocardiogram, which shows a permanent reduction in his heart function of about 30%." At the Towns request an independent medical evaluation for the purpose of a

disability rating was done with Dr. Zuli Steremberg on 4/23/97. He assigned a 50% permanent partial impairment (combined values) due to cardiovascular disease. In his 3/19/98 letter Dr. Urciuoli commented "In regards to Mr. Bonds performing the job duties of a lead plant operator, I would recommend that he not be required to do any heavy lifting or shovel snow which would be detrimental to his heart condition." We are having a detailed analysis of his actual job duties done in order to determine the specific physical requirements of his position. Note, Mr. Bond worked full duty up until the date of his retirement on 4/3/98.

Augusto Correia has filed a similar claim for heart and hypertension benefits. His history includes previous myocardial infarction, "hypertension, hyperlipidemia, and had a two vessel angioplasty" in 1995. His treating physician, Dr. Clifford Kramer, commented on 11/25/97 "He had a stress test on November 5, 1997 and was able to exercise to a level of 7 Mets and he had no symptoms of angina. There was no evidence of myocardial ischemia on his nuclear study and there was no evidence of myocardial ischemia on his electrocardiogram. On the basis of his previous angioplasty and his ability to achieve 7 Mets on the stress test without symptoms or evidence for myocardial ischemia, I would rate the permanency of his disability at 29%." Also reference his letter of 1/27/98, "It is my impression that Mr. Correia is incapable of performing the job duties of a lead treatment plant operator. The requirements of removing heavy pumps, opening and closing large valves, lifting and shoveling snow would be inadvisable from the standpoint of his previous cardiac history." We are also having a job analysis done of Mr. Correia's position and I hope to have that information as soon as possible. Please note, Mr. Correia claims to have injured his back during the course of his employment on 1/15/98 and he has been treated by Dr. Kenneth Lipow for disc herniation and subsequent surgery. We have issued a denial on his claim and to date we have not accepted it as compensable. Mr. Correia has been out of work due to the back injury since 1/15/98.

Bruce Thompson sustained a muscular injury to his right hip on 8/28/95 when he slipped while lifting a pump off of a truck along with two other employees. He was initially treated by Dr. M. Glass for a "quadriceps sprain" and was returned to work on 9/7/95. Mr. Thompson then began treating with Dr. Peter Naiman who diagnosed him as having bilateral avascular necrosis and he underwent a right total hip replacement on 5/13/96. We have issued denials on compensability. On 9/3/96 Dr. Naiman advised "...Mr. Thompson underwent arthroplasty of the right hip for avascular necrosis and, indeed, does have avascular necrosis in the contralateral left hip, which may require surgery. His capacity for work in the future is limited to sedentary desk work with intermittent periods of sitting and standing." A detailed job analysis was done in March of 1997 which was reviewed by Dr. Naiman and he advised, "This is not consistent with Mr. Thompsons physical capabilities under his present restrictions. He is, therefore, not medically fit to perform this type of job." At the Towns request, an independent medical evaluation was done by Dr. Michael Saffir who felt that the risk of degeneration of both hips outweighed the benefit of returning him to full duty. He further advised in his

addendum dated 6/16/97 that "...Mr. Thompson will not be able to return to his regular duties. He is permanently disabled from performing the duties of his position as a Water Pollution Control Maintainer III." Mr. Thompson via his attorney, Christopher Carveth, disputed those findings, indicating that he felt he continued to progressively recover. Unexpectedly, we received a letter from Attorney Carveth dated 11/7/97 along with a note from Dr. Naiman releasing Mr. Thompson to full duty work. We did not allow him to return to work. Reference Dr. Naiman's letter of 11/20/97 in which he indicated that he had made satisfactory progress and assigned a 25-30% rating of the right hip. We had him reevaluated by Dr. Saffir on 12/4/97 and he advised, "I concur that the patient's condition has currently stabilized and that he is at maximum medical improvement. The 25-30 percent impairment rating of the right hip, status post arthroplasty seems reasonable and this would probably translate to about 15 percent for the right lower extremity as a whole and would be consistent with the AMA Guidelines, Table #64. My concern remains though, that there is significant risk of further degeneration for both his left hip, which has findings of avascular necrosis similar to the findings that led to the right total hip replacement, as well as stress on the right total hip replacement which could lead to earlier deterioration and loosening. Both of these potential problems have been noted with avascular necrosis and joint replacements with a direct relationship to the activity level, as well as the overall duration of the activities on an ongoing basis. I discussed these risks for progressive problems in both hips with the patient in detail and he is clearly aware of them. Again, ideally an alternative type of work would be the best option." Note, Mr. Thompson has not worked since 5/3/96.

Vincent Reilly has been employed by the Town since 12/7/81, currently as a mechanic in the Police Garage. He has sustained two recent injuries, allegedly during the course of his employment. On 3/26/96 while lifting a tire he claims to have injured his neck and back as well as having complaints of headaches and dizziness. He was treated by Drs. Bindelglass (orthopedist), Lipow (neurosurgeon), Kutcher (vascular surgeon) and Sena (neurologist). MRI's of the head and neck were done and both were reported as negative. None of the examining physicians were able to find a cause for his complaints. He returned to work in a light duty capacity on 4/10/96 and regular duty on 96/96. On 7/15/97 he claims that while standing at the gas pumps his legs because numb causing him to fall to the ground striking the back of his head. He worked the rest of his shift without complaint, however, the next day he went to Med-Now and was treated for contusions and advised to return to work. He did not return and came under the care of his personal physician, Dr. David Lastormirsky, for multiple problems including migraine headache, ringing or buzzing in the ears, neck and back pain. He was referred to a neurologist, Dr. Philip Micalizzi, who did a cranial CT scan which was reported as being within normal limits. His diagnosis was "benign and nonspecific post-traumatic tinnitus associated with secondary headaches of a similar nature." He was also referred to Dr. Abraham Mintz (neurosurgeon) and Dr. Milan Beres (ear, nose & throat specialist). At the Towns request he was seen by Dr. Michael Saffir. Reference Dr. Micalizzi's letter of 1/26/98 which states in part, "The symptoms for which Mr. Reilly was seen, mainly the headaches and tinnitus, are presumed to be due to the 7/15/97 accident though, it must

be stated, that there is no objective evidence to substantiate the patients complaints." Please note, we have not accepted compensability of the extent and nature of his complaints. Mr. Reilly had a similar incident in 1990 when he claimed to have injured his neck while lifting a tire. At that time he also complained of diffuse numbness in the head with headache. All diagnostic testing done at that time were found to be within normal limits. He was treated at that time by Dr. Breyan (orthopedist), Dr. Stanciu (neurosurgeon) and Dr. Sena. Note, Mr. Reilly has been out of work since 8/27/97.

Frederick Silvestro has been employed by the Town since 10/6/65. On 5/21/97 he was attempting to lift a section of fence when the fence jammed and he felt immediate pain in his right shoulder, upper arm, neck and low back. He was seen that afternoon at Med-Now and later the same day by an orthopedist, Dr. Dante Brittis, for a biceps tendon rupture and question of right rotator cuff tear. On 8/1/97 he underwent surgical repair of the rotator cuff tear. Due to continued complaints of back and leg pain Dr. Brittis referred him to his associate Dr. Robert Dawe whose impression was "degenerative lumbar spondylosis involving multiple levels with right lumbar radiculopathy, probably on the basis of foraminal entrapment". A second opinion was sought with another orthopedist, Dr. Tushar Patel, on 1/19/98 who also did not recommend surgical intervention. He has continued to treat with both Dr. Brittis for the shoulder and Dr. Dawe for the spine with epidural steroid injections, physical therapy, MRI's, an EMG and most recently a CT myelogram. He was also recently seen in neurosurgical consultation with Dr. Kenneth Lipow who felt he was not a surgical candidate for either the lumbar or cervical conditions and he has recommended that he be followed in a pain management program. Mr. Silvestro has been absent from duty since 5/21/97.

encs.

# TOWN OF STRATFORD
## MEMORANDUM

**DATE:** March 31, 2000

**SUBJECT:** Pension Applications

**FROM:** Eileen Murphy, Insurance Coordinator  *E. Murphy*

**TO:** Pension Board Members

Attached are new pension applications from the following employees:

1. Helen Tashjian, Town Hall, Superannuation, 7 years of service. Ms. Tashjian is eligible in that she has more than 5 years of service and she has attained age 55 as of the requested effective date of 3/31/00, as per Section III, A. Superannuation of Appendix E to the Plan.

2. William Knapp, Police Department, Superannuation. Deputy Chief Knapp has reached 26 years of service as of the requested effective date of 4/16/00.

3. Paul Jahnige, Fire Department, Superannuation. Firefighter Jahnige has reached 29 years of service as of the requested effective date of 4/7/00.

4. Michael Armstrong, Fire Department, Disability in the Line of Duty. Firefighter Armstrong has been employed by the Town since 9/27/82 (17 years of service). He

Concerning the tabled applications, attached is new information regarding Richard Schirillo's request for disability in the line of duty retirement. To recap, in January of 1999 he applied for a disability retirement based on his cardiac condition. In September of 1998 he complained of chest pain and came under the care of a cardiologist, Dr. Ahmed Jamshidi. A coronary artery bypass graft was performed on 10/22/98. His application has been pending since that time due to lack of conclusive medical reports. He also submitted and was granted a Superannuated retirement effective 2/22/99, without prejudice against his pending request for disability retirement. His attorney recently submitted two additional medical reports from his personal physician, Dr. Raymond Keogh. Reference the 3/9/99 letter; "He has multiple risk factors for recurrent cardiac problems. ████████████████ He is very limited physically because of weakness and chest discomfort. I would recommend he be considered for complete disability". Also attached are copies of all the medical documents previously submitted in this matter.

encs.



# TOWN OF STRATFORD
# MEMO

---

**DATE:** April 28, 2000

**SUBJECT:** Disability Pension Applications

**FROM:** Eileen Murphy, Insurance Coordinator  *E. Murphy*

**TO:** Pension Board Members

Attached are two new applications for disability retirement from Octavia Pierce and Firefighter Michael Armstrong.

Please note the following concerning the tabled applications:

1. Richard Schirillo: To recap, Mr. Schirillo was employed by the Town on 10/25/66. On 9/15/98 he complained of chest pain after changing pumps and climbing stairs at the Water Pollution Control Plant. He was treated by Dr. Ahmed Jamshidi and ultimately underwent coronary artery bypass grafting on 10/22/98. He never returned to work after going out on sick leave on 9/16/98. He applied for a disability in the line of duty retirement on 12/24/98. That request was tabled pending additional medical documentation. Mr. Schirillo then requested and was granted a regular retirement effective 2/22/99, without prejudice against his pending request for disability retirement. His primary care physician, Dr. Raymond Keogh, commented in his 3/9/99 letter, "He has multiple risk factors for recurrent cardiac problems. ▬▬▬▬▬▬▬▬▬▬ He is very limited physically because of weakness and chest discomfort. I would recommend he be considered for complete disability." Copies of all pertinent medical records in our possession are attached.

2. Ronald Brenton: no new information.

3. Philip Esposito: no new information.