UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD SCHIRILLO, AUGUSTO CORREIA, RANDOLPH BOND, and RONALD BRENTON<br>　　　　　　Plaintiffs,<br><br>Vs.<br><br>TOWN OF STRATFORD, and in their individual and official capacities EILEEN MURPHY, MICHAEL FEENEY, DORINDA BORER, MARK BARNHART, JACK OBERNESSOR, MICHAEL SINGH, and SANDRA ZALIK<br>　　　　　　Defendants. | CIVIL ACTION NO. 3:03CV674(WWE)<br><br><br><br><br><br><br><br><br>July 15, 2005 |

PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(SUBSTANTIVE DUE PROCESS CLAIM)

**A.    Standard for Summary Judgment**

Practice book §17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". A material fact is one that would alter the outcome of the case. Hammer v. Lumberman's Mutual Casualty co., 214 Conn. 573, 578, 573A.2d 699 (1990) ; Budris v. Allstate Ins. Co., 44 Conn.App 53, 56, 686A.2d 386 (1996).  The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to

1

determine whether there is a genuine issue of any material face, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against who summary judgment is sought. Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir.1995). If, in this generous light, a material issue is found to exist, summary judgment is improper, and the case must proceed to trial. Eastway Constr. Corp. v. City of New York, 762 F. 2d 243, 249 (2d Cir.1985), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

**B.    Elements Required for a Substantive Due Process Claim**

The Due Process Clause was intended to prevent government officials "from abusing [their] power, or employing it as an instrument of oppression." Collins v. Harker Heights, 503 U.S. 115 at 126. (quoting DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189 at 196) (in turn quoting Davidson v. Cannon, 474 U.S., at 348). Furthermore, the courts have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government," Wolff v. McDonnell, 418 U.S. 539, 558 (1974), whether fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective. Sacramento, 523 U.S. 833 at 845-846 (quoting Daniels v. Williams, 474 U.S. 327 at 331).

In order to maintain a claim of substantive due process, a plaintiff must demonstrate two elements: (1) that the liberty or property interest at issue is a fundamental right, and (2)

that the conduct of the government employee or official was so egregious that it shocks the contemporary conscience.  Washington v. Glucksberg, 521 U.S. 702, 720-22 (1997).

**1.     The Plaintiffs Property Rights Are Fundamental Rights Protected by the Substantive Due Process Clause**

The first step in substantive due process analysis is to identify the constitutional right at stake.  Collins v. City of Harker Heights, 503 U.S. 115, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992).  Property interests are created not by the Constitution itself, but are created and defined by independent sources such as state statutes, regulations, municipal ordinances, and contracts.  Board of Regents v. Roth , 408 U.S. 564, 577, 33 L. Ed 2d 548, 92 S.Ct. 2701 (1972).  To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.  Id.

Moreover, case law does not support defendant's suggestion that substantive due process claims may never arise from contract law.  It is true that not every contractual or statutory right rises to the level of a constitutionally protected property interest.  However, in Albright v. Oliver, 510 U.S. 266 (1994), although the Supreme Court observed that the protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity, the Court did not limit the protections to substantive due process to those categories.

3

The Second Circuit has recognized that "entitlement to disability retirement is a constitutionally protected property interest for purposes of §1983 <u>Russell v. Dunston</u>, 896 F.2d 664, 668 (2d Cir. 1990).  The <u>Russell</u> court further stated, "we have previously held that municipal employee retirement benefits are constitutionally protected property." <u>Russell</u>, supra at 668-9, citing <u>Winston v. City of New York</u>, 759 F2d 242, 247-49 (2d Cir. 1985). (pension benefits); <u>Basciano v. Herkimer</u>, 605 F. 2d 605, 609 (2d Cir. 1978). (Disability retirement benefits, cert. denied, 442 US 929, 99 S. Ct. 2858, 61 L.Ed. 2d 292 (1979), <u>S&D Maintenance, Inc. v. Goldin</u>, 844 F2d. 962 (1988).

Similarly, courts have held that collective bargaining agreements can be sources of constitutionally protected property rights.  "A collective bargaining agreement is, of course, a contract between an employer and employees.  As such, it is not surprising based on the broad language contained in <u>Roth</u>, that courts have uniformly held that collective bargaining agreements can be the source of a property right entitled to due process protection." <u>Danese v. Knox</u>, 827 F. Supp. 185, 190 (S.D.N.Y. 1993) (citing <u>Brock v. Roadway Express, Inc.</u>, 481 US 252, 260-261, 107 S. Ct. 1740, 1747, 95 L. Ed 239 (1987); <u>Moffit v. Town of Brookfield</u>, 950 F2d 880, 885 (2d Cir. 1991).   In the instant matter, the §13.3 and §10.2 benefits are each set forth in the collective bargaining agreements *as amendments* to the Town's pension code and are clearly protected property interests under the Due Process Clause.

**2.    There Is A Genuine Issue of Material Fact As To Whether The Conduct of the Defendants Was Malicious and Shocked the Conscience of the Court**

Having identified a constitutional interest at stake, it is then a question of fact as to whether the Defendant's actions were arbitrary in the constitutional sense and therefore violative of substantive due process.  Plaintiffs submit they have presented sufficient evidence to show that there is indeed a question of fact relating to whether the Defendant's actions violated their rights under substantive due process.

"The touchtone of due process is protection of the individual against arbitrary action of government."  Wolff v. McDonnell, 418 U.S. 539, 558 (1974). Intentionality appears to be an important consideration in deciding whether misconduct by a state actor has crossed the line from a garden-variety tort into a constitutional violation.  See Collins v. City of Harker Heights, 503 U.S. 115, 127 (1992).  "Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property." Id.

Substantive due process is an outer limit on legitimacy of governmental action.  The due process clause "was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'"  DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 196, 109 S.Ct 998, 1003, 103 L.Ed.2d 249 (1989). (quoting Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986)). The "shock the conscience" standard can be applied to several areas of government activity, see e.g., Natale v. Town of Ridgefield, 170 F. 3d 258, 262-63 (2d Cir. 1999) (discussing the "shock the conscience" test in an administrative action case).  "The measure of what is

5

conscience-shocking is no calibrated yard-stick." Johnson v. Newburgh Enlarged Sch. Dist., 239 F. 3d 246, 252 (2d Cir.2001) (quoting Sacramento, 525 U.S. at 847). "Malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." Russo v. Hartford, 184 F. Supp. 2d 169, 196 (D. Conn. 2002).

The core protection provided by the Due Process Clause is protection against arbitrary government action. Thus, the "touchstone of due process is protection of the individual against ... the exercise of power without any reasonable justification in the service of a legitimate governmental objective." County of Sacramento, 523 U.S. at 845-846, 118 S.Ct. 1780. (internal quotation marks and citations omitted). Additionally, in Lawrence v. Achtyl, 20 F. 3d 529 (2d Cir. 1994), the court noted: Substantive due process protects individuals against governmental action that is arbitrary, conscious-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.' Moreover, government action might be so arbitrary that it violates substantive due process 'regardless of the fairness of the procedures used.' Id. at 537 (citations omitted).

The question, therefore, becomes whether the behavior "is so egregious, so outrageous that it may fairly be said to shock the contemporary conscience." Id. at 848 n. 8, 118 S.Ct. 1708. In this case, taking the facts most favorably to non-moving party, it is apparent that the conduct of the defendants was arbitrary as well as intentional and malicious. Plaintiffs allege the Defendants acted willfully, wantonly, maliciously and/or in bad faith to deprive them of the disability retirement benefits by a deliberate "shell game"

scheme whereby one agency or department points to another, in unending, circular fashion, as the proper place to pursue benefits.  The defendants' admission that none of these agencies or departments is in fact designed or even designated to evaluate the merits of such claims is by itself egregious.  The fact that this deprivation is designed to thwart and deny disability retirement benefits without reaching the merits is an behavior unacceptable of a government entity and violative of the public trust.  In this sense, it constitutes governmental behavior so outrageous it must shock the contemporary conscience of any court or jury.  Furthermore, actions of the Defendants will only continue to harm the plaintiffs, and those similarly situated unless remedied by the Court.[1]

At a minimum, the actions of the Defendants leave a question of fact as to whether they rise to the level of "outrageously arbitrary" as to constitute a gross abuse of governmental authority.

**C.    The Defendants are not entitled to qualified immunity.**

The defendants are not entitled to qualified immunity.  It is well established that the Retirement Board has considered and acted upon the plaintiffs' claims for heart and hypertension benefits pursuant to the Pension Code and as amended by the collective bargaining agreements.(Pension Code, Ex.2; Ex.19-22; Correia depo p 15, Ex.4; Schirillo depo 11, Ex. 11; Brenton depo p 28, Ex.3)  Once the compensability of these work-related

---

[1] This case is not covered by the Employee Retirement Income Security Act of 1974 (ERISA), the federal law that sets minimum standards for most voluntarily established pension and health plans in private industry to provide protection for individuals in these plans.
   In general, ERISA does not cover group health plans established or maintained by governmental entities, churches for their employees, or plans which are maintained solely to comply with applicable workers compensation, unemployment, or disability laws. ERISA also does not cover plans maintained outside the United States primarily for the benefit of nonresident aliens or unfunded excess benefit plans.

disability benefits were established, it was axiomatic that they were also entitled to the Chapter 568 benefits. The awarding of these additional benefits is mandatory under the Workers' Compensation Act, as proscribed by section 7-433c. Accordingly, the defendants failed, individually and collectively, in their duty to perform the strictly ministerial act of granting Chapter 568 benefits to each and every plaintiff who was awarded a work-related disability pension.

In general a municipal employee is generally immune from liability of a governmental act. This is "an act performed wholly for the direct benefit of the public and are supervisory or discretionary in nature". Wright v. Brown, 167 Conn. 464, 471, 356 A.2d 176 (1975). Under common law the performance of discretionary governmental acts is qualified by three recognized exceptions: "first where the circumstances make it apparent to the public officer that his/her failure to act would be likely to subject an identifiable person to imminent harm…second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws…and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Evon v. Andrews, 211 Conn. 501, 505, 559 A.2d 1131 (1989).

Plaintiffs have alleged sufficient facts to pursue claims against the individual defendants based on their intent to deprive plaintiffs of their benefits under §13.3. For this additional reason, the individual defendants are not entitled to qualified immunity.

Where a civil suit is brought pursuant to §1983 and arising from the performance of a municipal employees discretionary function, qualified immunity is available "in so far as their

8

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" Harlow v. Fitzgerald, 457, US 800,818, 102 SCT 2727 (19  ).

As argued above the plaintiffs were deprived of their right to an adequate notice and hearing prior to having §13.3 benefits denied by the town.  The Town's policy of beginning the administration of §13.3 benefits pursuant to state statute regulation Worker's Compensation law and then switching over to §17 grievance procedure of the CBA amounted to taking of the plaintiffs property (the §13.3) without due process.  Not only do the facts suggest a reasonable person would know they were depriving the plaintiffs of an entitlement, they prove it was done pursuant to town policy and was therefore, intentional. In addition, this policy was enforced without notifying the plaintiffs that the town would refer to §17 after the initial denial of benefits.

Furthermore, there are factual disputes that are material to resolving whether it was reasonable for the defendants to enforce the grievance procedures of §17 of the CBA in administering the plaintiffs' claims under §13.3 of the agreement, therefore, summary judgment should not be granted.  Likewise, the Court cannot conclude that the plaintiff can prove or cannot prove violations of substantive due process.  As stated above, Defendants unlawfully and intentionally denied the Plaintiffs hypertension and heart disease benefits that were guaranteed to them.  There is a question of fact as to whether the Plaintiff's property rights have been deprived and, accordingly, Motion for Summary Judgment should be denied.

WHEREFORE, for the reasons set forth, the Plaintiffs respectfully request that the Court deny the Motion for Summary Judgment and allow them to proceed with their claim.

FOR THE PLAINTIFFS
RICHARD SCHIRILLO, AUGUSTO CORREIA, RANDOLPH BOND and RONALD BRENTON

By:    /S/_____
James T. Baldwin, ct08535
Coles, Baldwin & Craft, LLC
1261 Post Road, P.O. Box 577
Fairfield, CT 06824
Tel. (203) 319-0800 Fax (203) 319-1210

10

<u>CERTIFICATION</u>

      This is to certify that a copy of the foregoing has been sent via regular mail, postage pre-paid, on this date to:

Richard Buturla, Esq.
Berchem, Moses & Devlin
75 Broad Street
Milford, CT 06460

/S/_____<br>James T. Baldwin