```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

RICHARD SCHIRILLO, AUGUSTO       :
CORREIA, and RONALD BRENTON,     :    No. 3:03-cv-674(WWE)
                                 :
        Plaintiffs,              :
                                 :
v.                               :
                                 :
TOWN OF STRATFORD, MICHAEL       :
FEENEY, EILEEN MURPHY, DORINDA:
BORER, MARK BARNHART, AND        :
JACK OBERNESSOR,                 :
                                 :
        Defendants.              :
```

### RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiffs Richard Schirillo, Augusto Correia and Ronald Brenton allege wrongful denial of hypertension or heart disease benefits pursuant to a collective bargaining agreement. Specifically, plaintiffs assert that defendants the Town of Stratford, Michael Feeney, Eileen Murphy, Dorinda Borer, Mark Barnhart, and Jack Obernessor violated their rights to due process under the United States Constitution. This Court construes plaintiffs' due process claim as asserting both substantive and procedural due process violations. Plaintiffs also assert violation of the Connecticut Constitution, common law tortious interference with contract, breach of contract, and breach of the implied covenants of good faith and fair dealing.

Defendants have filed a motion for summary judgment on all counts. For the following reasons, the motion for summary judgment will be granted.

Factual Background

The following undisputed facts are reflected in the statements of undisputed facts, the affidavits and other evidentiary submissions.

Plaintiffs Richard Schirillo and Augusto Correia are former employees of the Town of Stratford Water Pollution Control facility. Schirillo was employed by the Town from 1966 through May 1999, and Correia was employed from December 1972 through May 1998. Plaintiff Ronald Brenton was employed as a superintendent at the Town's water pollution control facility from 1972 until January 2001.

Plaintiffs Schirillo and Correia are members of a collective bargaining unit represented by the Stratford Public Works Employees Association Local No. 134, Affiliate of the International Federation of Professional and Technical Engineers, AFL-CIO-CLC. Plaintiff Brenton was a member of the collective bargaining unit represented by the Supervisor's Union Local 3804, Council 4, AFSCME AFL-CIO.

During the period relevant to this action, defendants were employed by the Town. Eileen Murphy, the insurance coordinator, was responsible for administering claims related to heart or hypertension benefits filed by union employees under various collective bargaining agreements. Mark Barnhart was the Town Manager from July 1, 1992 through June, 2002. Michael Feeney was

the Acting Town Manager and Town Manager from June 6, 2002 to July 16, 2004.  Jack Obernessor worked as the Director of Human Resources from April 16, 1990 to April 26, 2002.  Dorinda Borer became the current Director of Human Resources as of September 2, 2002.

<u>Collective Bargaining Agreements</u>

The Town and the Public Works Association were parties to a collective bargaining agreement in effect from July 1, 1997 through June 30, 2000.  Section 13.3 of this agreement provided that the Town:

> shall provide all members of the bargaining unit with the hypertension or heart disease benefits mandated for municipal fire and police personnel under P.A. 524 under the same terms and conditions as set forth in said Public Act provided, however, that any new employee hired on or after November 1, 1978 shall not be eligible for hypertension or heart disease benefits; provided, however, there shall be a rebuttable presumption as to whether any such health condition or impairment arose out of or in the course of employment.

In Article 17, the collective bargaining agreement defines a "grievance" as "any dispute between the Municipality and the Association or between the Municipality and any employee or group of employees concerning the interpretation, application or violation of the provisions of this Agreement."  It sets forth that "[n]o matter shall be subject to grievance unless taken up

within fifteen (15) working days of its most recent occurrence." Article 17 details the relevant grievance procedures, which include arbitration.

The Supervisor's Union and the Town are parties to a collective bargaining agreement. Article 10, section 2 of this agreement provides:

> All present members of the Bargaining Unit who are members of the Pension Plan shall be subject to all of the Provisions of 1971 P.A. 524 under the same terms and conditions set forth in said Public Act for Municipal Police and Fire Personnel. Any employee who is hired after August 17, 1979 shall not be eligible for this benefit.

Article 15 of the collective bargaining agreement details the provisions relevant to any grievance or dispute "which may arise between the parties concerning the application, meaning, or interpretation of this Agreement." All grievances must be presented within fifteen days of dispute. If the grievance cannot be resolved by a Department Head or the Grievance Committee, the grievance may be resolved through arbitration.

Public Act 524

Public Act 524, codified as Connecticut General Statute section 7-433c, provides in relevant part:

> in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial

> disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under...[the Workers' Compensation Act] if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems.

<u>Denial of Correia's Benefits</u>

On July 21, 1997, Correia requested heart and hypertension benefits pursuant to section 13.3 of the collective bargaining agreement. On July 25, the Town denied his request on the grounds that his condition pre-existed his employment commencement, the notice of the claim was untimely, and no medical documentation supported the claim.

On April 6, 1998, Correia filed a written grievance alleging that the Town had violated section 13.3 of the collective bargaining agreement by not providing him with heart and hypertension benefits.

After the grievance was denied throughout the several steps of the grievance procedure, it came before an arbitration panel. In considering the timeliness of Correia's grievance, the panel

reviewed the collective bargaining provision requiring that "[n]o matter shall be subject to Grievance unless taken up within fifteen [15] working days of its most recent occurrence."  The panel concluded that the grievance was untimely.  Specifically, the panel reasoned that Correia's effort to dispute the alleged wrongful denial of benefits approximately eight months earlier could not be considered a recent occurrence as described in the collective bargaining agreement.

Plaintiff's Union filed an application to vacate the award in Connecticut Superior Court.  This application was denied.

### Denial of Schirillo's Benefits

In October 1998, Schirillo, who had once served as a union steward, filed a Workers' Compensation First Notice of Injury requesting heart and hypertension benefits.  On November 9, 1998, the Town denied Schirillo's workers' compensation claim for heart and hypertension benefits.  As grounds for denial, the notice stated:

> Respondents deny claimed condition as described in Form 30C submitted on October 26, 1998, as "heart attack/coronary artery disease caused by overexertion and stress."  Claimed condition did not arise out of or during the course and scope of employment with the Town of Stratford on or about 9/15/98 or at any other time.  Alleged condition is personal in nature and of unknown etiology.  No medical documentation substantiate exclusivity of alleged condition to employment.

Thereafter, at a workers' compensation hearing, Schirillo was informed that the Workers' Compensation Commission did not

have jurisdiction over his claim for section 13.3 benefits pursuant to the collective bargaining agreement.

Schirillo later spoke to his union representative, who represented that he had no grounds on which to file a grievance for section 13.3 benefits. Neither the union nor Schirillo filed a grievance related to the Town's failure to provide him with benefits.

### Denial of Brenton's Benefits

On May 10, 1999, Brenton applied for heart and hypertension benefits under Article 10, section 2 of the collective bargaining agreement relevant to the Supervisor's Union. The Town denied Brenton's claim. The notice of denial stated:

> Respondents deny claimed heart condition as arising out of or during the course of employment with the Town of Stratford on 11/2/98 or at any other time. The alleged condition is personal in nature and of unknown etiology. No medical documentation to substantiate exclusivity of alleged condition to employment.

Neither Brenton nor the union filed a grievance challenging this denial.

### DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the

evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

### Section 1983 Claims

Plaintiffs allege that defendants violated their rights to due process. Plaintiffs do not specify whether they assert a claim of procedural or substantive due process. Thus, the Court construes the allegations as asserting violations of his substantive and procedural due process rights.

### Procedural Due Process

Defendants assert that summary judgment should enter on the

procedural due process claims because plaintiffs do not have a valid property interest, and because they were given all the process that was due. Defendants also argue that plaintiffs have not proved that defendants Feeney, Barnhart, Borer or Obernesser had the requisite personal involvement in the alleged deprivation to maintain a Section 1983 claim.

The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest. U.S. Const. amend. XIV, § 1; <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569-70 (1972). Thus, in order to sustain an action for deprivation of property without due process of law, a plaintiff must identify a property right, and show that the state actor has deprived plaintiff of that right without due process. To determine what process is due, the Court must consider: 1) the private interest that will be affected; 2) the risk of erroneous deprivation through the procedures, and the probable value of additional or alternative safeguards; and 3) the government's interest, including the function involved and the administrative burdens of the additional safeguards. <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976).

The Court finds that summary judgment is appropriate, even assuming the existence of the requisite personal involvement and property interest, since the procedures under the collective

bargaining agreement afforded plaintiffs all the process that was due.

The plaintiffs' interest in the payment of heart and hypertension benefits is significant, although not as substantial as an individual's interest in an employment termination which may involve an element of discipline.  See Cholewin v. City of Evanston, 899 F.2d 687, 690 (7th Cir. 1990) (job termination represents a stronger interest than interest in payment since termination also concerns disciplinary action).  However, the collective bargaining agreements provide for post-deprivation remedies, including arbitration, that afforded plaintiffs the opportunity to challenge the determination, thereby minimizing the risk of an error.  Courts have generally held that post-deprivation procedures, including arbitration, satisfy due process.  Harhay v. Town of Ellington Board of Education, 323 F.3d 206, 213 (2d Cir. 2003).

Plaintiffs argue that the fifteen-day grievance procedure rule was too abbreviated and thereby precluded the plaintiffs from obtaining their benefits.  Plaintiffs suggest that a one-year grievance procedure would have allowed for more grievances to be filed.  However, there is no indication in this case that plaintiffs could not have filed timely grievances within the fifteen-day period.  The plaintiffs had the capacity to ascertain the grievance procedure, which was articulated in the same

10

collective bargaining agreements that contained the provision for benefits. Plaintiffs Schirillo and Brenton admit to familiarity with the grievance procedures.

Further, a one-year filing period is of dubious value since it does not favor timely or efficient resolution of disputes. The Town has a strong interest in the efficient resolution of disputes through the grievance and arbitration procedures of the relevant collective bargaining agreements. Due process requires only fair and adequate procedural protections. Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 436 (4th Cir. 2002). Accordingly, the Court finds that the grievance procedures in place satisfied due process.

It is undisputed that neither Schirillo nor Brenton ever utilized the grievance procedure by filing a grievance based on denial of heart and hypertension benefits. A plaintiff is generally not required to exhaust administrative remedies before bringing a section 1983 claim. See Patsy v. Board of Regents, 457 U.S. 496 (1982). However, this rule does not apply to procedural due process challenges if the plaintiff failed to avail himself of the very administrative procedures he attacks as inadequate. Dotson v. Griesa, 398 F.3d 156, 161 n.2 (2d Cir. 2005).

Accordingly, the motion for summary judgment will be granted on plaintiffs' procedural due process claims.

<u>Substantive Due Process</u>

Plaintiffs' allegations may be construed as claiming substantive due process violations based on deprivation of employment benefits. The Court finds that summary judgment is appropriate on such claims.

To succeed on their substantive due process claim, plaintiffs must show that defendants' conduct "shocks the conscience." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998). As the Second Circuit recently articulated, only the most egregious official conduct violates a party's substantive due process rights. <u>Cusick v. City of New Haven</u>, 2005WL1916364 2d Cir. 2005) (failure of officials to provide inculpatory information unearthed in murder investigation was not conscience shocking); <u>see</u> <u>also</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986) (substantive due process doctrine bars official conduct that affords "brutality the cloak of law"). Even conduct considered to be reprehensible may not fall within the narrow range of conscience shocking conduct that violates substantive due process. <u>Cusick</u>, 2005WL1916364.

In this instance, the denial of plaintiffs' benefits fails to raise an inference that the conduct at issue was so egregious as to shock the conscience. Defendants provided written notice of the denials with statements of reasons, including, <u>inter</u> <u>alia</u>, failure to provide adequate medical documentation. Any wrongful

denial could have been redressed through grievance and arbitration procedures.  However, plaintiffs failed to pursue these remedies in the manner delineated by the contract terms.  Accordingly, summary judgment will enter on any claim for denial of substantive due process.

### State Law Claims

Plaintiffs' remaining counts against the defendants are based on the state constitution and common law.  Having dismissed all of the federal claims, the Court will not exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

### Conclusion

For the foregoing reasons, the motion for summary judgment [doc. #25] is GRANTED.  Plaintiffs' state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

The clerk is instructed to enter judgment and to close this case.

SO ORDERED this 12th day of September, 2005 in Bridgeport, Connecticut.

_____/s/_____
WARREN W. EGINTON, SENIOR U.S.D.J.